EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| In re: | |
|---|---|
| Aprobación de Cánones de Ética Judicial de 2005 | 2005 TSPR 39<br><br>163 DPR _____ |

Número del Caso: ER-2005-3

Fecha: 5 de abril de 2005

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

    Aprobación de Cánones de
    Ética Judicial de 2005

RESOLUCIÓN

San Juan, Puerto Rico, a 5 de abril de 2005.

La Ley de la Judicatura del 2003, Ley Núm.201 de 22 de agosto de 2003, 4 L.P.R.A. sec. 24 et seq., establece, entre otras cosas, la obligación de este Tribunal de adoptar e implantar Cánones de Ética Judicial que rijan la conducta de los Jueces y Juezas de Puerto Rico. Dispone, además, que los Cánones adoptados "deberán reflejar las expectativas de la sociedad respecto a la judicatura, establecer la relación fiduciaria que debe existir entre el juez y la comunidad y servir de base para la selección y nombramiento de los mejores candidatos". 4 L.P.R.A. sec. 24(d).

Transcurridas más de dos décadas desde la última revisión a los Cánones de Ética Judicial de Puerto Rico, efectuada en 1977,--previo a la aprobación de la Ley de la Judicatura y motivados por los reclamos ciudadanos de una mayor transparencia en la función judicial, por los cambios ocurridos en la sociedad y en el ordenamiento jurídico, y por la necesidad de evaluar la idoneidad de las normas éticas vigentes --el Tribunal Supremo, mediante Resolución de 26 de agosto de 2002, ordenó la revisión de los cánones. Para el cumplimiento de esa tarea, se

2

creó el Comité para la Revisión de los Cánones de Ética Judicial. La revisión requirió de los miembros del Comité el identificar los principios que constituyen la base de las normas éticas, con el objetivo de conformarlos a la realidad del presente, sin perder de perspectiva que se trata de principios fundamentales que permanecen inalterados en el transcurso del tiempo y lo que cambia son las actitudes hacia esos principios.

Luego de más de dos años de extensa labor, el Comité presentó un Proyecto de Cánones el cual fue evaluado y modificado por este Tribunal.

El nuevo cuerpo de Cánones de Ética Judicial que acompaña esta Resolución tiene, entre otras, las siguientes características:

- Establece una nueva estructura y organización que facilita su manejo y comprensión.

- Establece un Preámbulo, que recoge el marco filosófico de las normas éticas, incluyendo el concepto de sensibilidad en la adjudicación judicial.

- Reafirma el valor que representa el principio de la independencia judicial, que establece el deber general de que la judicatura ejemplifique la independencia judicial tanto en sus aspectos individuales como institucionales.

- Precisa los atributos de la judicatura ideal deseada para nuestro sistema de justicia.

- Atiende la recomendación de los ciudadanos de que los jueces cumplan con el horario de trabajo en sala.

- Establece de manera afirmativa el deber de todo juez y jueza de ser diligente en la administración del proceso judicial y de aprobar solamente las solicitudes de suspensión y prórroga de procedimientos que estén plenamente justificadas.

- Acoge nuevas normas éticas que precisan aún más los parámetros de la conducta ética judicial. Al respecto:

  - Establece el deber de los jueces y las juezas de promover procedimientos disciplinarios contra funcionarios y empleados de la Rama Judicial cuando la conducta impropia y deshonrosa les conste personalmente, Canon 7.

- Establece el deber de no intervenir indebidamente con testigos, prueba documental o cualquier aspecto de un procedimiento disciplinario, Canon 7.

- Precisa el concepto de la independencia de criterio del juez y de la jueza en la adjudicación judicial, Canon 8.

- Establece el deber de notificar a las partes de un pleito los nombres de las personas cuyo nombramiento se está considerando para que actúen como peritos del tribunal o como recurso profesional, Canon 10.

- Establece el deber de la judicatura de salvaguardar la confidencialidad de la información obtenida en el ejercicio de sus funciones judiciales, Canon 18.

- Establece como causa para la inhibición de un juez o una jueza, el hecho de que el juez o la jueza participó previamente en la controversia porque actuó, en su calidad de funcionario o funcionaria del gobierno, como abogado, abogada, asesor, asesora o testigo esencial, Canon 20 (g).

- Establece como causa para la inhibición de un juez o jueza, el hecho de que cualquier abogado o abogada que representa a alguna parte en el caso, sea abogado o abogada del juez o la jueza o lo haya sido durante los últimos tres años, Canon 20(h).

- Reglamenta la celebración de matrimonios, Canon 21.

- Establece una norma general precisa sobre el comportamiento público de la judicatura, Canon 23.

- Prohíbe que los jueces y las juezas atiendan consultas de las Ramas Ejecutiva o Legislativa o de sus funcionarios, Canon 25.

- Prohíbe que los jueces y las juezas participen en actividades o realicen gestiones que puedan ser percibidas como influencia indebida ante foros gubernamentales o privados, Canon 26.

- Prohíbe que los jueces y las juezas actúen como asesores legales de individuos o

entidades públicas, independientemente de que la asesoría conlleve o no remuneración, Canon 27.

- Prohíbe que los jueces y las juezas realicen gestiones indebidas para obtener una renominación al cargo judicial, Canon 29.

- Establece que el juez o la jueza deberá estar asistido por un abogado o abogada cuando comparece como parte ante un foro judicial o ante un foro administrativo adjudicativo, Canon 31.

- Establece normas específicas sobre aceptación de regalos y donativos, Canon 35.

- Establece que un juez o una jueza no podrá intervenir en pleitos cuyo resultado pudiera afectar sustancialmente un interés económico o financiero personal o familiar, Canon 36.

- Reconoce que los jueces y las juezas tienen el deber de rendir, de conformidad con las reglas y normas administrativas aplicables, los informes que les sean requeridos para dar cuenta de las labores judiciales, Canon 38.

- Revisa las normas sobre inhibición. Como resultado, se incluyeron en el Canon 20 los nuevos incisos (g) y (h).

Luego de considerar el proyecto sometido por el Comité para la Revisión de los Cánones de Ética Judicial designado, el Tribunal adopta los nuevos Cánones de Ética Judicial que se acompañan como Apéndice 1 de esta Resolución.

Este nuevo cuerpo de cánones tendrá vigencia y regirá la conducta de todos los jueces y juezas del Tribunal de Primera Instancia y del Tribunal de Apelaciones seis (6) meses a partir de la fecha de esta Resolución, esto es, el 5 de octubre de 2005. En esa fecha quedarán derogados los Cánones de Ética Judicial aprobados mediante Resolución de 12 de mayo de 1977, según enmendados.

Por su excelente trabajo y fiel cumplimiento con la encomienda que les fue delegada, el Tribunal agradece la labor de los miembros del Comité para la Revisión de los Cánones de Ética Judicial creado mediante Resolución del 26 de agosto de 2002: Hon. Federico Hernández Denton, Presidente; Hon. Liana Fiol Matta, Hon. Luis Rivera Román, Hon. Isabel Llompart Zeno, Hon. Sigfrido Steidel Figueroa, Dr. José Jaime Rivera Rodríguez, Lcda. Ygrí Rivera de Martínez, Lcdo. Guillermo Figueroa Prieto,

Lcdo. Luis Mariano Negrón Portillo, Lcdo. Eduardo Villanueva y la Lcda. Patricia Otón Olivieri.

Publíquese.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

# I N D I C E

Página

**Preámbulo**................................................................ ........................ 1

**Parte I. De los Deberes y las Atribuciones Generales**

Canon 1. Cumplimiento de la Ley.............................................. 3

Canon 2. Independencia Judicial............................................. 3

Canon 3. Jerarquía de los Deberes Judiciales..................................... 4

Canon 4. Obligaciones Administrativas............................................. 5

Canon 5. Conducta Discriminatoria Prohibida ................................................ 5

Canon 6. Relaciones y Cooperación entre las Juezas y los Jueces. ................. 7

Canon 7.Procedimientos Disciplinarios.................................. 7

**Parte II. Función Judicial Adjudicativa**

Canon 8. Desempeño de Funciones Adjudicativas ......................................... 9

Canon 9. Evaluación de la Prueba.................................................. 10

Canon 10. Nombramiento de Personas para Asistir al Tribunal...................... 11

Canon 11. Intervención Durante el Juicio.......................................... 12

Canon 12. Comunicaciones Ex Parte ................................................ 13

Canon 13. Trato hacia los Participantes del Proceso Adjudicativo ................. 14

Canon 14. Conducta en los Procedimientos Judiciales.................................... 15

Canon 15. Solemnidad de los Procedimientos; Fotografías,
Películas, Grabación o Reproducción ........................................... 17

Canon 16. Puntualidad ............................................................ 18

Canon 17. Diligencia ............................................................... 19

Canon 18.  Confidencialidad  .............................................................  20

Canon 19.  Declaraciones Públicas ....................................................  21

Canon 20.  Limitaciones; Inhibición  ................................................  21

## Parte III.  Otras Funciones Judiciales Impuestas por Ley

Canon 21.  Celebración de Matrimonios............................................  26

Canon 22.  Funciones Electorales ......................................................  27

## Parte IV.  Actividades Extrajudiciales

Canon 23.  Deber General...................................................................  29

Canon 24.  Actividades Extrajudiciales.. ...........................................  29

Canon 25.  Sugerencias para mejorar el Derecho; Consultas;
            Vistas Públicas ................................................................  31

Canon 26.  Cargos y Encomiendas Incompatibles............................  32

Canon 27.  Prohibición del Ejercicio Privado de la Abogacía
            y la Notaría....................................................................  36

Canon 28.  Actividades Políticas Prohibidas ....................................  38

Canon 29.  Gestiones para Obtener Nombramientos o Cargos.........  39

Canon 30.  Influencias Indebidas .......................................................  40

Canon 31.  Juezas y Jueces como Partes o Testigos .........................  41

Canon 32.  Actividades Extrajudiciales Remuneradas .....................  42

Canon 33.  Uso de Personal para Beneficio Propio ..........................  43

**Parte V.  Comportamiento Público**

Canon 34.  Actividades Sociales...................................................................... 45

Canon 35.  Aceptación de Regalos ................................................................. 45

Canon 36.  Actividades Económicas............................................................... 47

**Parte VI.  Informes**

Canon 37.  Informes de Divulgación Financiera ............................................. 50

Canon 38.  Otros Informes.............................................................................. 50

# Cánones de Ética Judicial de Puerto Rico

**PREÁMBULO**

En una sociedad democrática corresponde al Poder Judicial la función de interpretar las leyes y resolver los casos y las controversias de forma rápida, eficiente, sensible y justa. La independencia judicial, la administración efectiva e imparcial de la justicia y la confianza de la ciudadanía en su sistema de justicia contribuyen a afianzar y a consolidar las bases democráticas de nuestra sociedad. Por ello, promover estos principios y aspiraciones es deber consustancial al correcto ejercicio de las funciones adjudicativas de quienes están llamados a impartir justicia.

Los miembros del Poder Judicial promueven y velan por la igualdad de toda persona ante los Tribunales y evidencian, mediante su comportamiento, la importancia de una judicatura independiente e imparcial para la protección de los derechos humanos. Al promover una judicatura independiente, las juezas y los jueces garantizan que los tribunales sean defensores del constitucionalismo y del principio de legalidad.

Al igual que todo ciudadano o ciudadana, las juezas y los jueces están obligados a cumplir con la ley, modelando la conducta ciudadana a la que aspira la sociedad democrática. Están obligados a cumplir con las obligaciones de la Rama Judicial y respetar y honrar la función judicial. Además, al asumir el cargo aceptan también ciertas restricciones a su conducta, tanto en el ejercicio de sus funciones propiamente judiciales, como en sus demás actividades, ya sean personales o profesionales. Estas limitaciones, si bien no les privan de los derechos que poseen como miembros de nuestra sociedad, representan sacrificios en su vida pública y privada que enaltecen la integridad e independencia de su ministerio y estimulan el respeto y la confianza en la judicatura. Igualmente, se comprometen a fomentar un trato respetuoso y cordial hacia sus pares, las funcionarias y los funcionarios de la Rama Judicial y los que comparecen en sala. También, mantienen el orden, decoro y dignidad del Tribunal y la solemnidad de sus procedimientos.

Estos cánones son normas mínimas de conducta que deben cumplir celosamente quienes tienen la encomienda de impartir justicia. Están diseñados para guiar a las juezas y a los jueces en el desempeño de sus cargos judiciales y sirven de estructura para la reglamentación de la conducta judicial. Pretenden, de manera prioritaria, fortalecer la independencia judicial como pilar de la sociedad democrática. Además, están encaminados a promover la confianza de la ciudadanía en su sistema de justicia, al requerir de las juezas y los jueces la más estricta

adhesión a principios éticos en el manejo de sus asuntos personales, financieros y extrajudiciales. Por último, los Cánones de Ética Judicial habrán de garantizar el eficiente desempeño de las juezas y los jueces, al estimularlos a ser laboriosos, imparciales, prudentes, serenos, sensibles, estudiosos continuos del Derecho y cuidadosos en la interpretación de la ley, y al instarlos a procurar la solución armoniosa de las disputas que son sometidas a su consideración.

Los cánones de ética aquí enunciados son de carácter general. Su contenido y alcance preciso serán delimitados por los distintos escenarios en los que se desempeñen las juezas y los *jueces. Por lo tanto, las juezas y los jueces serán rigurosos al estudiarlos y aplicarlos a sus realidades particulares. También deberán ser conscientes de que su cabal cumplimiento requiere tener como norte los principios y las aspiraciones que los inspiran.*

**HISTORIAL**

El Preámbulo es una declaración general de los principios que se encuentran en los Cánones de Ética Judicial. El propósito del Preámbulo es establecer un marco filosófico de la normativa. Su alcance es análogo al de la exposición de motivos que antecede una ley, por lo cual es preciso dejar claro que no representa una disposición o fuente para la imposición de sanciones, aunque sí para la interpretación de los cánones particulares.

Los conceptos aquí enmarcados provienen en parte de la identificación de los principios generales ínsitos en los Cánones de Ética Judicial de 1977. Aparte de éstos, se incorporaron conceptos adicionales que resultaron en la adopción de nuevos cánones, entre los cuales se destaca el Canon I que establece la obligación de cumplir con la ley.

La incorporación del concepto de sensibilidad en el cuarto párrafo responde al interés de estimular el desarrollo de esta cualidad entre las juezas y los jueces. A la obligación de ser estudiosos del Derecho se añadió el vocablo "continuos" con el fin de enfatizar la importancia que tiene la formación y el estudio continuo del Derecho para la aplicación eficaz de la justicia.

**PARTE I. DE LOS DEBERES GENERALES**

**CANON 1. Cumplimiento de la Ley**

Las juezas y los jueces respetarán y cumplirán la ley y serán fieles al juramento de su cargo.

**HISTORIAL**

Este nuevo canon está inspirado en la obligación que impone el Juramento de Fidelidad y de Toma de Posesión de Cargo o Empleo a los funcionarios y las funcionarias del Estado Libre Asociado, Artículo 182 del Código Político de 1902, según enmendado, 3 L.P.R.A. Sec. 601. Corresponde, en parte, al Canon 2A del Código Modelo de Conducta Judicial promulgado por la American Bar Association, que establece una norma similar en cuanto a la obligación de los miembros de la judicatura de respetar y cumplir con la ley.

**COMENTARIOS**

La norma de este canon responde al interés en reconocer que el deber judicial trasciende la función de administrar o interpretar la ley y se establece con el objetivo de transmitir claramente la idea de que las juezas y los jueces no están por encima de la ley y son los primeros llamados a respetarla y cumplirla. Esta no implica que toda violación a alguna ley o reglamento específico es, de por sí, una violación ética que conlleve un proceso disciplinario.

**CANON 2. Independencia Judicial**

Las juezas y los jueces ejemplificarán la independencia judicial, tanto en sus aspectos individuales como institucionales.

**HISTORIAL**

Este nuevo canon proviene del concepto de independencia judicial comprendido en *Los Principios de Bangalore sobre la Conducta Judicial*, Anejo del Informe del Relator Especial sobre la independencia de los magistrados y abogados, O.N.U., Comisión de Derechos Humanos, 59o. Sesión, Tema 11d, E/CN.4/65 (2003). La primera oración del Canon XIII de los Cánones de Ética Judicial de 1977 acoge de cierta manera el principio de la independencia judicial al establecer que los miembros de la judicatura deben proteger y promover la independencia del poder judicial como factor de equilibrio en la estructura gubernamental de nuestro sistema democrático.

**COMENTARIOS**

El canon establece la obligación de ejemplificar la independencia judicial. Los Principios de Conducta Judicial de Bangalore, *supra*, del cual proviene el texto de este párrafo, expresan que la independencia judicial es un requisito previo del principio de legalidad y una garantía fundamental de la existencia de un juicio justo. La integridad e independencia de las juezas y los jueces dependen de que éstos ejerzan sus funciones libres de temor y de toda clase de favoritismo que afecten la adjudicación imparcial de las controversias judiciales.

## CANON 3. Jerarquía de los Deberes Judiciales

Los deberes judiciales tendrán prelación sobre cualquier otra actividad. Las juezas y los jueces no abandonarán ni descuidarán las obligaciones de su cargo.

**HISTORIAL**

Este canon corresponde a la primera oración y la última del Canon III de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género. La primera oración establece, en parte, una norma similar a la del Canon 3A Modelo del Código Modelo de Conducta Judicial promulgado por la American Bar Association. La última oración establece una nueva norma, basada en parte en el Canon 3 C(1) Modelo, y en el Principio 6- Competencia y Diligencia- de los Principios de Conducta Judicial de Bangalore, *supra.*

**COMENTARIOS**

El canon establece el carácter prioritario de las obligaciones judiciales frente a cualquier otra actividad en la que las juezas o los jueces pudieran estar involucrados o involucradas, y prohíbe el abandono o descuido de dichas obligaciones. El debido desempeño de las funciones judiciales requiere que los miembros de la judicatura sean competentes, sensibles, íntegros y diligentes. Deben mantenerse competentes y aumentar sus conocimientos y habilidades, a la luz de los recursos disponibles que se les ofrezcan en la Academia Judicial. También deben desarrollar las cualidades personales necesarias para el correcto desempeño de sus obligaciones judiciales. Las obligaciones judiciales no sólo incluyen la resolución de los casos y controversias, sino también otras tareas relevantes al buen funcionamiento de los tribunales. Véase el Canon 3C(1) del Código Modelo de Conducta Judicial promulgado por la American Bar Association y los Principios 6.3 y 6.4 de los Principios de Conducta Judicial de Bangalore, *supra.*

**CANON 4.    Obligaciones Administrativas**

Las juezas y los jueces cumplirán cuidadosa y diligentemente las obligaciones administrativas que les imponen las leyes y los reglamentos aplicables a la Rama Judicial.  También cumplirán diligentemente las normas y órdenes administrativas pertinentes de la Oficina de Administración de los Tribunales.

**HISTORIAL**

Este canon corresponde al Canon V de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género.  Reitera el mismo contenido del Canon V, con algunas modificaciones de estilo.  El vocablo "instrucciones" de la segunda oración se sustituyó por la frase "normas y órdenes administrativas pertinentes" para identificar adecuadamente las comunicaciones que emite la Oficina de Administración de los Tribunales.  Corresponde, en parte, al Canon 3C(1) Modelo del Código Modelo de Conducta Judicial promulgado por la ABA.

**COMENTARIOS**

El correcto desempeño de las funciones judiciales no se limita a las estrictamente adjudicativas.  Conforme a este canon, la obligación de actuar con diligencia y cuidado en el manejo de los asuntos judiciales se extiende al cumplimiento de las normas administrativas impuestas por las leyes y reglamentos aplicables a la Rama Judicial, y por las normas y órdenes administrativas de la Oficina de Administración de los Tribunales.

**CANON 5.    Conducta Discriminatoria Prohibida**

Las juezas y los jueces no incurrirán en conducta constitutiva de discrimen por motivo de raza, color, nacimiento, origen, condición socioeconómica, ideas políticas o religiosas, condición física o mental, edad, género u orientación sexual.  Tampoco permitirán que los que comparezcan ante el tribunal, ni el personal bajo su dirección y control, incurran en dicha conducta.

**HISTORIAL**

Este canon, que acoge expresamente la política pública de la Rama Judicial contra todo tipo de discriminación, proviene del segundo párrafo del Canon XI de los Cánones de Ética Judicial de 1977.  Dicho párrafo fue incorporado en el Canon en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999*, In re* Enmiendas a los Cánones de Ética Judicial, 149 D.P.R. 733 (1999). Mediante dicha Resolución, el Tribunal Supremo añadió tres (3) párrafos al Canon XI para prohibir

expresamente toda manifestación de discrimen por parte de la Judicatura y modificó el lenguaje de todos los cánones para que fuese neutral en cuanto a género. De los tres (3) párrafos relacionados con la prohibición de discrimen en el Canon XI de 1977, sólo se acogió el que aquí se incluye por entender que abarca todas las conductas discriminatorias especificadas en los otros párrafos. Se utiliza el término "género" en vez de sexo, ya que la Comisión Judicial para investigar el Discrimen por Razón de Género distinguió en su informe los términos "sexo" y "género". Por consiguiente, utilizó el término "sexo" para referirse únicamente a las características biológicas de hombres y mujeres, y el término "género" para referirse a la construcción histórico-social que se ha hecho de las características que se consideran definitorias de los hombres y de las mujeres, y de los comportamientos esperados de los unos y de las otras en nuestra sociedad. El concepto "género" trata, entonces, de los comportamientos y funciones que se le han asignado social y culturalmente a los hombres y a las mujeres en todos los aspectos de la vida, desde los relacionados con la sexualidad hasta los que tienen que ver con el desempeño de determinadas actividades y ocupaciones en una comunidad dada. Informe sobre el Discrimen por Razón de Género en los Tribunales de Puerto Rico, agosto de 1995, pág. 18.

**COMENTARIOS**

En In re Robles Sanabria, 2000 T.S.P.R. 94, el Tribunal Supremo concluyó que el juez querellado incurrió en hostigamiento sexual en la modalidad de ambiente hostil contra la querellante y que con dicha conducta violó los principios éticos encarnados en los Cánones de Ética Judicial. El Tribunal aludió al Memorando Núm. 117 de 2 de marzo de 1988, mediante el cual el Poder Judicial estableció su propia política pública en torno al hostigamiento sexual en el empleo y a las enmiendas de los Cánones de Ética Judicial de 1999, para prohibir expresamente toda manifestación de discrimen por parte de la Judicatura, incluyendo el discrimen por razón de género manifestado a través del hostigamiento sexual. La finalidad de la política pública de la Rama Judicial en torno al hostigamiento sexual, al igual que en el contexto de la Ley Núm. 17 de 22 de abril de 1988, conocida como Ley de Hostigamiento Sexual en el Empleo, es proscribir el hostigamiento sexual en el empleo en sus distintas modalidades y establecer un procedimiento administrativo para atender las quejas de quienes consideran haber sido víctimas de esta conducta en sus centros de trabajo. Esta política pública del Poder Judicial se ampara, no sólo en los claros preceptos constitucionales recogidos en la política pública del Estado contra el hostigamiento sexual, sino también en la Ley Núm. 64 de 31 de mayo de 1973, que crea un sistema de personal autónomo para el Poder Judicial fundamentado en el principio de mérito, que excluye de los procesos de personal cualquier consideración de carácter discriminatorio. In re Robles Sanabria, supra.

**CANON 6.    Relaciones y Cooperación entre las Juezas y  los Jueces**

Las juezas y los jueces cooperarán entre sí para lograr la más eficiente administración de la justicia.  Su conducta estará enmarcada en el respeto mutuo, la cordialidad y la colaboración profesional, sin que importen las diferencias en sus posiciones dentro del sistema judicial.  No harán críticas infundadas que tiendan a menospreciar el prestigio de sus compañeros jueces o compañeras juezas.

**HISTORIAL**

El canon corresponde al Canon IV de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género.  Reitera el mismo contenido del Canon IV con algunos cambios de estilo, excepto su última oración, la cual fue convertida en el nuevo Canon 7.

La primera oración del canon corresponde en parte al Canon 3C (1) del Código Modelo de Conducta Judicial promulgado por la American Bar Association.

**COMENTARIOS**

El correcto ejercicio de las funciones adjudicativas supone actuar de forma cordial, serena, prudente y respetuosa, no sólo hacia las personas que acuden a los tribunales en busca de justicia y hacia los funcionarios y las funcionarias, sino también hacia las compañeras juezas y jueces.  El Canon 3C (1) del Código Modelo de Conducta Judicial establece que el juez o la jueza cooperará con otros jueces y juezas y funcionarios o funcionarias del tribunal en lo relativo a la administración de los asuntos del tribunal.

**CANON 7. Procedimientos Disciplinarios**

Cuando los hechos les consten personalmente, las juezas y los jueces promoverán y cooperarán con los procedimientos disciplinarios que procedan contra cualquier jueza, juez, abogada, abogado, funcionaria, funcionario, empleada o empleado de la Rama Judicial que actúe contrario a lo dispuesto en los cánones, en las normas administrativas, reglamentos y leyes vigentes.

Las juezas y los jueces no intervendrán indebidamente con testigos, prueba documental o cualquier aspecto del procedimiento disciplinario.

**HISTORIAL**

Este nuevo canon corresponde en su mayor parte a la última oración del Canon IV de los Cánones de Ética Judicial de 1977. Su contenido corresponde a las normas del Canon 3D(1) y (2) del Código Modelo de Conducta Judicial promulgado por la American Bar Association. La segunda oración es nueva.

**COMENTARIOS**

El deber de mantener una actitud de cordialidad y respeto que impone el Canon 6 no excluye la obligación de velar por que la conducta ética de los compañeros jueces y juezas sea cónsona con estos cánones, tanto en sus actividades personales como en el desempeño de las funciones judiciales.

Por ello, este canon impone a los miembros de la judicatura la obligación de promover procedimientos disciplinarios contra juezas, jueces, abogadas y abogados cuya conducta sea contraria y en violación de los cánones de ética judicial o profesional, cuando la conducta incurrida les conste personalmente, independientemente de que ello pudiera resultarles incómodo.

La segunda oración de este canon, que establece una nueva norma prohibiendo la intervención indebida de las juezas o de las jueces durante el curso de los procedimientos disciplinarios, está dirigida a proteger la integridad de estos procedimientos. Dicha conducta prohibida incluye no sólo incitar a un testigo para que altere su testimonio, sino también promover un testimonio que es falso, o falsificar evidencia documental. In re Clavell Ruiz, 131 D.P.R. 500 (1992); In re Vargas Soto, 146 D.P.R. 55 (1998).

**PARTE II.    FUNCIÓN JUDICIAL ADJUDICATIVA**

**CANON 8.    Desempeño de Funciones Adjudicativas**

Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, prudentes, serenos e imparciales.  Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.

La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos**,** partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias.

**HISTORIAL**

El primer párrafo de este canon corresponde al primer párrafo del Canon II de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género.  En la revisión del contenido se realizaron cambios de estilo y se incluyó nuevo texto para enfatizar el principio de la independencia de criterio judicial por el cual deben regirse los miembros de la judicatura durante el desempeño de la función adjudicativa.

El segundo párrafo recoge la primera oración del Canon XI de 1977, que trata sobre la conducta imparcial que las juezas o los jueces deben procurar en el ejercicio de sus funciones judiciales.

**COMENTARIOS**

El Tribunal Supremo de Puerto Rico expresó en *In re* Cruz Aponte, 2003 T.S.P.R. 51, al amparo del Canon II de 1977, que "aunque la figura de las jueces o de las juezas está revestida de autoridad, ésta no debe utilizarse indebidamente dentro o fuera del tribunal.  La referida disposición va dirigida a evitar que los jueces o las juezas tomen decisiones ensoberbecido por el poder."

Ejemplos de actuaciones judiciales que pudieran ser violatorias de los requerimientos de este canon son: descortesía con respecto a las alegaciones de culpabilidad o a las transacciones entre las partes; interferir con las relaciones entre los abogados y sus clientes, uso impropio del lenguaje, tardanza indebida en la solución de

los casos, comunicaciones *ex parte*, comentarios sobre casos *subjudice*, falta de atención al testimonio de testigos e intervenciones indebidas a favor de amistades.

Un aspecto que merece atención es la obligación de las juezas o de los jueces de mantenerse al día en el estudio del Derecho. Esto implica aprovechar al máximo las oportunidades educativas que se le provean, dedicar tiempo a la lectura de la jurisprudencia y de las nuevas leyes. En cuanto a la obligación de ser diligente en "el empeño de descubrir los hechos esenciales de cada controversia", se implica que los jueces o las juezas no deben asumir la actitud pasiva del que se limita tan sólo a escuchar. Por el contrario, deben intervenir cuando ello sea oportuno, conscientes de que nuestro sistema es adversativo y de que no les corresponde hacer investigaciones por su cuenta. Véase R. J. Torres Torres, *Cánones de Ética Judicial de Puerto Rico* 9 (Núm. 1-4) Forum 7, 8 (1993).

### CANON 9. Evaluación de la Prueba

Las juezas y los jueces concederán a toda persona que tenga interés en un procedimiento o la abogada o al abogado de dicha persona el derecho a ser oída conforme lo dispone la ley. En el cumplimiento de este deber, resolverán cada controversia fundamentándose en su propia evaluación de la prueba presentada. Los jueces y las juezas no permitirán que el reclamo por las partes de sus derechos constitucionales y estatutarios influya negativamente al hacer sus determinaciones judiciales. En cualquier asunto sometido a su consideración podrán, cuando a su juicio lo requieran los fines de la justicia, solicitar proyectos de sentencias, resoluciones u órdenes, los cuales podrán ser utilizados como instrumento auxiliar.

### HISTORIAL

Este canon corresponde, en parte, al segundo párrafo del Canon II de los Cánones de Ética Judicial de 1977. La primera oración procede del Canon 3 B(7) del Código Modelo de Conducta Judicial de la American Bar Association. La tercera, procede del Canon XIV de 1977 que se refería a que en casos criminales las juezas o los jueces no deberán permitir que en su ánimo influya el ejercicio de la persona acusada de su derecho a defenderse. Se sustituyó por un nuevo texto más abarcador que incluye la misma prohibición pero extiende su ámbito a cualquier determinación judicial, ya sea en un procedimiento civil o criminal.

### COMENTARIOS

El derecho de la persona a ser oída conforme lo dispone la ley representa la garantía constitucional del debido proceso. El reconocimiento de este deber en los cánones se hace para enfatizar la importancia de que las juezas y los jueces garanticen el debido proceso en el desempeño de la función adjudicativa.

En *In re* Díaz García, 2003 T.S.P.R. 13, el Tribunal Supremo explicó que, para que un error de hecho o de derecho configure una conducta antiética, se requiere demostrar que el error cometido constituyó un abuso intencional de la discreción judicial, o que el error fue de tal magnitud que reflejó conducta impropia o favoritismo hacia algún abogado. Expresó, además, que las juezas o los jueces que niegan a un litigante el debido proceso de ley, actúan ilícitamente y proyectan falta de imparcialidad, lo que puede constituir también conducta antiética. Aclaró que "la negativa del debido proceso de ley es la falta de observar aquella imparcialidad fundamental que es la esencia de todo concepto de justicia".

Sobre el tema de los proyectos de sentencia, el Tribunal Supremo ha expresado que la práctica de solicitar estos proyectos no es per se censurable. El canon propone el proyecto de sentencia como "instrumento auxiliar para los magistrados del país sobrecargados y agobiados de una carga enorme de causas judiciales". *Báez García* v. *Cooper Labs.*, Inc. 120 D.P.R. 145 (1987). Conforme a la opinión emitida en *Román Cruz* v. *Díaz Rifas*, 113 D.P.R. 500, 508 (1982), el Tribunal Supremo reiteró en *Báez García*, *supra*, que resulta altamente impropio "firmar a ciegas" dichos proyectos de sentencia. El ejercicio de la facultad de utilizar proyectos de sentencia requiere de las juezas y los jueces asegurarse que las determinaciones de hechos incluidas en sus sentencias reflejen digna y fielmente los procedimientos ocurridos en el tribunal y que, cuando utilicen este mecanismo, lo hagan con la ponderación necesaria.

## CANON 10.  Nombramiento de Personas para Asistir al Tribunal

Las juezas y los jueces podrán contar con los recursos humanos y el apoyo técnico necesario para el adecuado desempeño de sus funciones. Al nombrar peritos, tasadores, comisionados o administradores judiciales, síndicos, árbitros, tutores u otros recursos humanos, o al recibir apoyo técnico para asistir al tribunal en su función judicial, las juezas y los jueces se cuidarán de que tales designaciones sean necesarias y recaigan en personas de probada idoneidad profesional e integridad moral. Ningún nombramiento se hará a base de favoritismos personales o recomendaciones fundamentadas en dicho criterio. Las juezas y los jueces supervisarán cuidadosamente las labores de dichas personas.

Las juezas y los jueces notificarán a las partes o a sus abogadas o abogados, los nombres de las personas que estén considerando como recursos profesionales o periciales antes de su designación para que, en un término razonable, las partes puedan presentar cualquier objeción al nombramiento de estos recursos, pertinente a su idoneidad o imparcialidad.

**HISTORIAL**

El primer párrafo corresponde al Canon VI de los Cánones de Ética Judicial de 1977, con ligeras modificaciones de estilo. Se añaden los conceptos de "recursos humanos" y "apoyo técnico" para aclarar su contenido.

El segundo párrafo es nuevo, ya que como resultado de la evaluación del canon se determinó que es necesario establecer una norma sobre el deber de las juezas o de los jueces de notificar a las partes los nombres de los recursos profesionales o periciales que estén considerando para asistirle en la función judicial. De esta forma, las partes tendrán la oportunidad de objetar la idoneidad o imparcialidad del nombramiento de los recursos, previo a su designación y contratación.

**COMENTARIOS**

Las juezas y los jueces siempre deben evitar dar la impresión de que están actuando indebidamente. La utilización frecuente de los mismos peritos o tasadores, sobre todo si media una amistad personal conocida, puede dar base en ciertas ocasiones a comentarios negativos. Véase Torres Torres, *supra*, pág. 11. Precisamente, con el fin de preservar el debido proceso y evitar la mera apariencia de que las juezas o los jueces conceden ventaja indebida a alguna de las partes, se incluyó en este canon el deber de éstos de notificar a las partes, en un término razonable, el nombre de las personas que se están considerando como recursos profesionales o periciales.

**CANON 11. Intervención Durante el Juicio**

Aunque es función y derecho de las abogadas y los abogados presentar el caso de sus respectivos clientes y clientas en la forma más favorable a sus méritos, es ministerio fundamental de la judicatura velar por que no se cometa una injusticia. Las juezas o los jueces son partícipes en la búsqueda de la verdad y la determinación de lo que es justo. A esos fines, deberán intervenir durante el curso de cualquier procedimiento judicial para evitar dilaciones injustificadas, para esclarecer cualquier asunto o impedir una injusticia.

No obstante, se abstendrán de unirse en solidaridad con cualesquiera de las partes mediante interrogatorios injustificados, pronunciamientos sobre los méritos de la causa o comentarios impropios o perjudiciales. Tampoco realizarán gestiones que constituyan intervenciones indebidas con testigos, prueba documental o cualquier aspecto del proceso judicial.

## HISTORIAL

Este canon corresponde al Canon XIV de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género. El Canon XIV acogió a su vez el primer párrafo del anterior Canon V de los Cánones de Ética Judicial de 1957 ("Intervención durante el juicio"), excepto su tercera oración.

Como resultado de la revisión del Canon XIV de Ética Judicial de 1977, su última oración fue reubicada en el Canon 9 de estos cánones. Su contenido, que establece que las juezas o los jueces no deberán permitir que en su ánimo influya el ejercicio de la persona acusada de su derecho a defenderse en casos criminales, fue sustituido por un nuevo texto que incluye la misma prohibición pero en un contexto abarcador que extiende su ámbito a las determinaciones judiciales en los procedimientos civiles.

## COMENTARIOS

El canon está dirigido a evitar intervenciones parcializadas de las juezas o de los jueces a favor de alguna de las partes, que puedan influir en el resultado del caso y minar la confianza en los tribunales. En nuestro sistema adversativo de justicia, cuya naturaleza es distinta a la del sistema inquisitorial, las juezas o los jueces que intervienen para otorgar ventaja indebida a alguna parte en el proceso judicial actúan en contra de un principio fundamental del sistema, que es el debido proceso de ley.

## CANON 12.  Comunicaciones Ex Parte

Las juezas y los jueces no celebrarán entrevistas privadas con las partes o sus abogadas o abogados ni permitirán comunicaciones o argumentos de éstas o éstos que pretendan influir en su actuación judicial en asuntos de su competencia o bajo su consideración, cuando los otros intereses que puedan ser afectados no estén representados ante el tribunal, excepto en casos no contenciosos, en los que deberán actuar con suma cautela.

## HISTORIAL

Este canon corresponde al Canon XV de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo. El Canon XV de Ética Judicial de 1977 reiteró el contenido del Canon VII de los Cánones de Ética Judicial de 1957 que se refería a la prohibición de conceder entrevistas privadas a una parte sin la presencia de la parte adversa, excepto la palabra "conceder", que se sustituyó por la de "celebrar", con el fin de establecer una prohibición más clara y abarcadora.

**COMENTARIOS**

La prohibición de este canon no se extiende a las comunicaciones de alguna de las partes sobre aspectos procesales del caso, siempre y cuando las juezas o los jueces notifiquen simultáneamente el asunto a la otra parte, salvo en situaciones de emergencia, por ejemplo: solicitudes de turnos posteriores o de suspensiones mediante conversación telefónica a la cual tengan acceso ambas partes.

Respecto a éste y los demás cánones, el vocablo "abogada" o "abogado" se refiere a todos los profesionales del Derecho, incluyendo a fiscales. En los procedimientos civiles, así como en los criminales, como norma general las juezas o los jueces evitarán celebrar reuniones ex parte. Esto significa que estarán presentes todas las partes en las reuniones que los juezas o las jueces celebren en el curso de los procedimientos. En las causas criminales, por ejemplo, las partes serán los o las fiscales y las abogadas o los abogados defensores.

## CANON 13. Trato hacia los Participantes del Proceso Adjudicativo

Las juezas y los jueces tratarán con consideración y respeto a los abogados y a las abogadas.

También tratarán con consideración y respeto a testigos, jurados, funcionarias o funcionarios del tribunal y a toda persona que comparezca ante el tribunal. Requerirán igual conducta de parte de las abogadas y los abogados, y de las funcionarias o funcionarios o empleadas o empleados del tribunal que estén bajo su dirección.

**HISTORIAL**

Este canon corresponde, en parte, al Canon XVI de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo. El Canon XVI, a su vez, corresponde en parte al anterior Canon VI de los Cánones de Ética Judicial de 1957 ("Consideración y cortesía para los que comparecen ante el juez").

El Canon XVI que aprobó el Tribunal Supremo en 1977 estableció la norma de que todos los jueces y las juezas tienen el deber de evitar atenciones desmedidas hacia las personas que comparecen a su sala. En la revisión del canon, la comisión revisora anterior determinó que esta norma era necesaria para evitar que los jueces o las juezas empañen la imagen de imparcialidad del tribunal al exhibir conducta extremadamente atenta por razón de la posición o el prestigio de tales personas. También consideró necesario incluir la última oración para establecer el deber de todos los jueces y todas las juezas de velar que las abogadas, los abogados, funcionarias y funcionarios del tribunal observen las normas de este canon.

**COMENTARIOS**

El canon enmienda la primera oración del Canon XVI de Ética Judicial de 1977, para eliminar el trato particular hacia los abogados que comienzan a ejercer la profesión. Si bien los jueces y las juezas deben tomar en cuenta que los abogados y las abogadas que comienzan a ejercer la profesión pueden cometer ciertos errores por su inexperiencia, la consideración y cortesía hacia éstos no debe resultar en trato que pueda ser percibido como preferente o favorecedor, en perjuicio de los demás profesionales del Derecho.  De igual manera, los jueces y las juezas deben evitar consideraciones o atenciones desmedidas hacia las demás personas que participan del proceso adjudicativo.  Por otro lado, los jueces y las juezas tienen la responsabilidad de procurar en su sala un ambiente de respeto a la dignidad de todo ser humano que allí comparece.

**CANON 14.  Conducta en los Procedimientos Judiciales**

En el curso de los procedimientos judiciales, las juezas y los jueces mantendrán su conducta dentro de la debida propiedad y circunspección sin mostrar impaciencia o severidad excesivas.  Tampoco harán comentarios ni gestos ajenos al proceso judicial, entendiéndose comprendidos dentro de esta prohibición, aquellos comentarios, expresiones o gestos que envuelvan burla o mofa.  No ridiculizarán de modo alguno a abogadas, abogados, partes, testigos, funcionarias o  funcionarios del tribunal ni a otras personas que acudan ante el tribunal.

Las juezas y los jueces dirigirán los trabajos del tribunal con orden y decoro, y evitarán todo proceder que pueda afectar la dignidad y el respeto debido al tribunal.  Intervendrán para impedir cualquier conducta impropia de las partes, las abogadas y los abogados o cualquier otra persona, y tomarán las acciones que procedan de acuerdo con la ley, los Cánones del Código de Ética Profesional y las mejores tradiciones del sistema judicial.

**HISTORIAL**

Este canon corresponde, en su mayor parte, al Canon XVII de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo.  El Canon XVII, a su vez, corresponde en parte al anterior Canon IV de Ética Judicial de 1957 ("Trabajos del Tribunal"), con algunas modificaciones de lenguaje que fueron incluidas a la luz de la jurisprudencia.

Como resultado de la revisión de este canon se amplió su texto con el objetivo de aclarar conductas específicas que deben ser evitadas, tales como los comentarios, gestos o las expresiones de burla para ridiculizar a las personas en sala.

**COMENTARIOS**

En el canon se sustituyó el texto que se expresa sobre "la actitud general, manifestaciones y tono de voz", con el vocablo "conducta". El cambio se basó en que la conducta es el reflejo de la actitud general. Las manifestaciones y el tono de voz igualmente representan conducta que refleja la actitud general.

Se eliminó el tercer párrafo del canon XVII ya que se pretende disuadir a los jueces y las juezas de elogiar o censurar conducta cuyo efecto sea realzar o rebajar la figura de cualquier abogado o abogada, para evitar quejas de favoritismo o persecución.

En In re Maldonado Torres, 2000 T.S.P.R. 190, el Tribunal Supremo expresó, sobre el comportamiento de un miembro de la Judicatura al dirigirse hacia un abogado en tono extremadamente fuerte e innecesario, lo siguiente:

> Los jueces son responsables, en unión a los abogados, de preservar la dignidad de los procedimientos judiciales mediante la aplicación de normas de urbanidad y respeto mutuo, evitando así cualquier tipo de conducta que lesione el decoro y la solemnidad que deben existir en toda sala de justicia. In re Andreu Ribas, 81 D.P.R. 90, 121 (1959). Tales estándares de comportamiento deben prevalecer aun en situaciones donde el juez se enfrente a personas irrespetuosas, incapacitadas, altaneras o irresponsables. El hecho de que el juez sea provocado, no debe llevar a éste a descender al nivel de su interlocutor, sino que su alto ministerio exige un supremo esfuerzo por conservar la serenidad.

El Tribunal explicó, además, que para vindicar la autoridad del tribunal un juez tiene a su disposición remedios tales como el desacato civil o criminal y cualquier otra medida establecida por ley o avalada por las mejores tradiciones del sistema judicial. El respeto a los tribunales no implica el establecimiento de una censura previa, ya que la crítica sana y oportuna hacia la Rama Judicial es una herramienta necesaria para sujetar a los jueces al estricto cumplimiento de sus funciones. Sin embargo, indicó que las críticas no pueden pasar los límites de la civilidad y corrección, ni pueden generar actitudes que los jueces no vienen obligados a tolerar.

Conforme a este canon, utilizar palabras soeces en sala; intervenir indebidamente con una testigo citándola por teléfono para que se presentara en sala e induciéndola a que renunciara a su trabajo o aceptara los cargos (haciéndole creer que éste actuaba dentro del marco de autoridad que le confería su cargo); y sacar un arma de fuego durante un caso relacionado con la custodia de unos menores son actos

contrarios a la correcta función judicial, pues denota imprudencia, parcialidad y falta de temperamento judicial.  In re Martínez González, 2000 T.S.P.R. 106.

El orden y el decoro en el tribunal deben estar fundamentados en el modelo que el propio juez o la propia jueza imponga con su conducta, no en el ejercicio crudo de su autoridad.  El desacato, instrumento para vindicar la dignidad del tribunal, debe ser utilizado como última medida. Un juez o una jueza que recurra continuamente al desacato para mantener el orden y respeto en el tribunal, con toda probabilidad carece de las cualidades de carácter que exige el desempeño judicial.  El juez o la jueza deberá evitar, además, toda expresión suya que pueda reflejar prejuicio de la naturaleza que sea o que pueda arrojar dudas sobre su capacidad para actuar imparcialmente.  Torres Torres, supra, pág. 22.

**CANON 15.    Solemnidad de los Procedimientos; Fotografías, Películas, Grabación o Reproducción**

Las juezas y los jueces mantendrán el proceso judicial en un ambiente de solemnidad y respeto.  Tomar fotografías o películas en el salón del tribunal durante la celebración de sesiones judiciales o recesos entre dichas sesiones, y radiodifundir o televisar procedimientos judiciales, resta dignidad al tribunal, puede distraer al testigo que esté prestando testimonio y puede obstaculizar el logro de un juicio imparcial, por lo que no debe permitirse.  No obstante, se podrá permitir la toma de fotografías o películas en ocasiones estrictamente ceremoniales.

Las juezas y los jueces podrán, además, permitir la grabación o reproducción de procedimientos judiciales para fines educativos, a solicitud de instituciones universitarias y bajo las condiciones siguientes:

a. Cuando el medio de grabación o reproducción no distraiga a los testigos y demás participantes, ni en forma alguna menoscabe la dignidad del procedimiento.

b. Cuando se haya obtenido previamente el consentimiento de las partes afectadas y de todos los testigos*.*

c. Cuando la grabación o reproducción, así obtenida, vaya a ser exhibida o utilizada luego de que el procedimiento de que se trate haya sido adjudicado en forma final y firme. Las juezas y los jueces tomarán las providencias para que dichas grabaciones permanezcan bajo la custodia del

17

tribunal hasta que toda la prueba testifical haya sido desfilado.

Las prohibiciones contenidas en este canon no aplicarán al uso oficial de grabadoras o máquinas autorizadas por la Oficina de Administración de los Tribunales, o al uso de grabadoras o equipo similar por las abogadas y los abogados de las partes.

## HISTORIAL

Este canon corresponde al Canon XVIII de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género. El primer párrafo del canon reitera, a su vez, el contenido del anterior Canon X de los Cánones de Ética Judicial de 1957.

## COMENTARIOS

En su Resolución de 24 de agosto de 1995 sobre el Canon XVIII de Ética Judicial, el Tribunal Supremo dispuso, mientras se considera y resuelve el ámbito y alcance del canon, lo siguiente: "Dentro del significado y espíritu de este canon, es incompatible la práctica de permitir la toma de fotografías, películas o vídeos sobre los procesos judiciales, incluso de sus recesos entre sesiones, mediante su filmación al mantener, y permitir, abiertas las puertas del salón de sesiones o a través de las pequeñas áreas de cristal transparente de esas puertas. Dicha práctica, o cualquiera afín, tiende a restar el decoro, la solemnidad y el respeto que debe permear en el salón de sesiones del tribunal y, por ende, debe ser descontinuada inmediatamente."
Debido a las implicaciones de índole constitucional que requieren ser consideradas al amparo de las disposiciones de este canon, el mismo se encuentra bajo estudio y evaluación, razón por la cual permanece inalterado en este proyecto.

## CANON 16. Puntualidad

Las juezas y los jueces serán puntuales en el cumplimiento de sus obligaciones y reconocerán el valor que tiene el tiempo de las abogadas y los abogados, litigantes, jurados, testigos y todas las personas que comparezcan ante el tribunal.

Comenzarán las sesiones a las horas regulares de sesión de conformidad con la reglamentación vigente, a menos que las circunstancias de los asuntos del calendario ante su consideración se lo impidan. En tales casos, explicarán a las partes, abogadas, abogados y al público presente, las razones que impidieron abrir la sesión a la hora señalada.

**HISTORIAL**

Este canon corresponde al Canon XIX de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo. El Canon XIX reitera, a su vez, las normas del anterior Canon III de Ética Judicial de 1957 y en su segundo párrafo acoge la norma de Pueblo v. Arraiza, 103 D.P.R. 243 (1975).

**COMENTARIOS**

La Regla 12 de las Reglas para la Administración del Tribunal de Primera Instancia, 4 L.P.R.A. Ap. II-B, establece las normas en cuanto a celebración de sesiones, horario regular de éstas y otros aspectos del funcionamiento del tribunal. En Pueblo v. Arraiza, supra, el Tribunal Supremo recalcó el deber de las juezas y los jueces de tener presente que las horas regulares de sesión del tribunal son de 9:00 A.M. a 12:00 M. y de 2:00 P.M. a 5:00 P.M. y que sólo cuando por razones fundadas no se pueda cumplir con dicho horario, deberán hacer los arreglos pertinentes con el Jueza Administradora o el Juez Administrador para que se atienda el calendario y se les explique a las partes, a los abogadas y a los abogados y al público presente las razones que le impiden abrir la sesión a la hora señalada. El Tribunal Supremo expresó: "Así lo espera el público. Así hacerlo contribuirá a enaltecer la dignidad de los tribunales y a estimular la puntualidad en los abogados". Pueblo v. Arraiza, supra, pág. 245. Véase, además: In re Ferrán Quintana, 2002 T.S.P.R. 93, e In re Miranda Rivera, 141 D.P.R. 94 (1996).

En la extensión de los horarios de trabajo de las personas que son funcionarias y empleadas de la Rama Judicial, por razones de necesidad del servicio, las juezas y los jueces deberán tomar en cuenta las leyes y los reglamentos laborales, federales y locales para evitar la violación de éstos.

## CANON 17. Diligencia

Las juezas y los jueces serán diligentes en la administración del proceso judicial de los asuntos sometidos ante su consideración y procurarán que las partes también lo sean. Examinarán cuidadosamente las solicitudes de suspensión y de prórroga de procedimientos y las aprobarán sólo cuando estén plenamente justificadas.

**HISTORIAL**

Este canon corresponde al Canon XX de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo. El Canon XX, a su vez, reitera el anterior Canon XIII de

Ética Judicial de 1957, con nuevo texto para establecer el deber de los jueces o de las juezas de examinar con cuidado las solicitudes de suspensión o prórroga de un procedimiento y de aprobarlas sólo cuando hayan sido justificadas plenamente, de conformidad con la reglamentación aplicable.

**COMENTARIOS**

El Informe que la Comisión Futurista de los Tribunales sometió a la consideración del Tribunal Supremo en el 2000 reveló que existe una percepción negativa general entre los ciudadanos en cuanto al tiempo que toma resolver los casos en los tribunales. La mayoría de las personas entrevistadas señalaron que el tiempo que se toman los procesos judiciales es excesivo. Visión en Ruta al Futuro, Vol. II, Informe de la Comisión Futurista de los Tribunales, abril 2000, página 19. Para cambiar esa percepción negativa es necesario, de acuerdo con el canon, que las juezas y los jueces eviten toda dilación innecesaria en los procedimientos y que ponderen todos los factores y las circunstancias al evaluar toda solicitud de prórroga o suspensión de procedimientos, de conformidad con la Regla 17 sobre suspensiones y transferencias de vistas, Reglas para la Administración del Tribunal de Primera Instancia, 4 L.P.R.A. Ap. II-B, y cualquier otra norma aplicable.

**CANON 18.  Confidencialidad**

Las  juezas y los jueces mantendrán la confidencialidad de la información obtenida en el ejercicio de sus funciones judiciales que por ley, reglamento, normas u órdenes administrativas les esté prohibido divulgar.

**HISTORIAL**

Este nuevo canon dispone en cuanto al deber de los miembros de la judicatura de salvaguardar la confidencialidad de información de conformidad con las prohibiciones que se hayan establecido con tal propósito en las leyes, reglamentos, normas y órdenes administrativas que les sean aplicables. Tal deber comprende instruir sobre la norma de confidencialidad dispuesta en el canon, a las personas empleadas y funcionarias que están bajo la supervisión de las juezas y de los jueces.

**COMENTARIOS**

La norma acogida en este canon está basada en el Principio 4.14 de los Principios de Bangalore sobre la Conducta Judicial, supra, donde se establece que la información obtenida por las juezas o los jueces en el ejercicio de sus competencias judiciales no será utilizada o revelada por éstos para ningún otro propósito no relacionado con el ejercicio de tales competencias.

**CANON 19. Declaraciones Públicas**

Las juezas y los jueces no harán declaraciones públicas sobre asuntos que estén sometidos ante su consideración, ni explicarán la razón de sus actuaciones.

**HISTORIAL**

Este canon corresponde al Canon XXV de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo de 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, excepto parte del texto de su última oración, que fue eliminado.

**COMENTARIOS**

Se eliminó la norma que establecía que las juezas o los jueces no deben permitir que las personas que actúan bajo su dirección como empleadas y funcionarias emitan declaraciones públicas sobre asuntos que están ante la consideración del tribunal. Esto se debió a que el Código de Ética para Funcionarios, Empleados, Ex Funcionarios y Ex Empleados de la Rama Judicial, aprobado el 1 de abril de 1998, divulgado mediante Memorando Núm. 25 del Director Administrativo de los Tribunales, dispone expresamente en su Regla 4 la misma prohibición para las personas que trabajan en el tribunal como empleadas y funcionarias, a quienes se les prohíbe "divulgar información, opiniones y comunicaciones de naturaleza confidencial o privada a abogados, a litigantes o a personas autorizadas".

Este canon no prohíbe a los miembros de la judicatura ofrecer explicaciones, cuyo propósito sea orientar o ilustrar al público presente en la sala, sobre la decisión emitida o para explicar algún aspecto del procedimiento con el fin de evitar impresiones erróneas. La autorización para ofrecer estas orientaciones y explicaciones no se extiende a asumir la defensa de las decisiones judiciales, sino a exponer que la decisión es emitida al amparo de los fundamentos de Derecho aplicables. Véase Torres Torres, supra, a la página 27.

**CANON 20. Limitaciones; Inhibición**

Las juezas y los jueces entenderán y adjudicarán los asuntos que se les asignen, salvo aquellos en los que la ley requiera su inhibición y en cualesquiera de los casos siguientes, pero sin limitarse a éstos:

    a.    por tener prejuicio o parcialidad hacia cualesquiera de las personas, las abogadas o los abogados que intervengan en el pleito o por haber prejuzgado el caso;

b.   por tener interés personal o económico en el resultado del caso;

c.   por haber sido abogada o abogado, asesora o asesor de cualesquiera de las partes o de sus abogadas o abogados en la materia en controversia, o fiscal en una investigación o procedimiento criminal en el que los hechos fueron los mismos presentes en el caso ante su consideración;

d.   por haber presidido el juicio del mismo caso en un tribunal inferior, o por haber actuado como magistrado a los fines de expedir la orden de arresto o citación para determinar causa probable en la vista preliminar de un procedimiento criminal;

e.   por existir parentesco de consanguinidad o afinidad dentro del cuarto grado con la persona acusada, con la víctima del delito, con la abogada defensora o el abogado defensor, con la o el fiscal, o con un miembro del jurado en un procedimiento criminal, o con cualesquiera de las partes o sus representantes legales en un procedimiento civil;

f.   por intervenir en el procedimiento una persona natural o jurídica que le haya facilitado o gestionado algún préstamo, o una persona jurídica que le haya facilitado o gestionado algún préstamo, en el que no se hayan dispensado las garantías o condiciones usuales;

g.   cuando, en calidad de funcionario o funcionaria que desempeña un empleo público, haya participado como abogada o abogado, asesora o asesor o testigo esencial del caso en controversia;

h.   cuando una de las abogadas o los abogados de las partes sea abogada o abogado de las juezas o de los jueces que han de resolver la controversia ante su consideración, o lo haya sido durante los últimos tres años;

i.   por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

Las juezas y los jueces deberán inhibirse tan pronto conozcan de la causa de inhibición mediante resolución escrita en la que harán constar dicha causa, con su notificación a todas las partes.

## HISTORIAL

Este canon corresponde al Canon XII de los Cánones de Ética Judicial de 1977, según enmendado en 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo.

La primera oración acoge el texto del Canon 3B(1) del Código Modelo de Conducta Judicial de la American Bar Association.

Se añade un nuevo inciso "g" que establece como causa de inhibición que las juezas o los jueces, con anterioridad a su nombramiento y en calidad de funcionario o funcionaria pública, hayan participado como asesora o asesor legal, abogada o abogado o testigo esencial del caso en controversia. El concepto "caso en controversia" al que se refiere este inciso es un caso específico cuya controversia está ante la consideración de un tribunal. No se trata de planteamientos generales o específicos de Derecho sobre los cuales la funcionaria o el funcionario haya expresado o emitido una opinión, previo a su nombramiento judicial. Este fundamento procede del Canon 3C (1) (e) del Código Modelo de Conducta Judicial para los Jueces de Estados Unidos, que expresa: "(e) the judge has served in governmental employment and in such capacity participated as counsel, advisor, or material witness concerning the merits of the particular case in controversy".

Se añade, además, un nuevo inciso "h" que dispone la posibilidad de que las juezas o los jueces tengan que inhibirse en un caso en el que el representante legal de una de las partes sea a su vez representante legal de las juezas o de los jueces en algún asunto, o que lo haya sido durante los últimos tres años.

## COMENTARIOS

Se incurre en violación de este canon cuando, entre otras razones, los jueces o las juezas exhiben conducta que arroja dudas sobre su imparcialidad y que mina la confianza pública en el sistema de justicia. In re Castro Colón, 2001 T.S.P.R. 127.

El inciso "b" del canon, que establece como causa de inhibición tener interés personal o económico en el resultado del caso, debe ser examinado a la luz de los demás cánones, particularmente el canon que regula la conducta en el contexto de actividades económicas (Canon 36).

En *In re* Lugo Rodríguez, 2001 T.S.P.R. 132, el Tribunal Supremo resolvió que a pesar de que al comienzo del procedimiento disciplinario el término del nombramiento del juez había vencido, la conducta de éste constituía una violación del Canon 38 del

23

Código de Ética Profesional, que exige a todo abogado y abogada esforzarse al máximo de su capacidad en la exaltación del honor y la dignidad de su profesión aunque ello conlleve sacrificios personales, y que establece el deber de evitar hasta la apariencia de conducta impropia. Además, señaló que el querellado, al actuar como juez, desplegó cuando menos un juicio poco prudente al intervenir en el asunto de la fianza con relación a un imputado que era su vecino. El Canon 11 de Ética Judicial de 1977 requiere que las juezas y los jueces no sólo actúen de manera imparcial, sino que, además, exige conducta que excluya toda posible apariencia de que el miembro de la judicatura es susceptible de actuar a base de influencias de personas o por motivaciones impropias. Por ello, también, el Canon 12 de Ética Judicial de 1977 le requiere a los jueces y a las juezas inhibirse en cualquier procedimiento judicial cuando exista cualquier causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar.

De otro lado, en Ex parte Andino Torres, 2000 T.S.P.R. 164, el Juez Asociado del Tribunal Supremo, Hon. Efraín Rivera Pérez, emitió un voto de inhibición, fundamentando su posición en que había participado como juez cuando el caso estuvo ante la consideración del Tribunal de Circuito de Apelaciones, el cual dictó sentencia en la que confirmó la determinación del Tribunal de Primera Instancia. Como parte de su análisis, el Juez Asociado hizo referencia a los Cánones 11 y 12 (g) de Ética Judicial de 1977, y también a la Regla 63 de Procedimiento Civil e indicó que, conforme a estas normas, un juez no sólo ha de ser imparcial, sino que su conducta ha de excluir toda posible apariencia de parcialidad. El Juez Asociado reiteró la norma de "apariencia de parcialidad" y explicó que "para que proceda la inhibición no es imprescindible probar la existencia de prejuicio o parcialidad de hecho; basta con la apariencia de parcialidad o prejuicio". Indicó, además, que este criterio, establecido en la Regla 63.1 de Procedimiento Civil sobre inhibición o recusación del juez, es similar al que se dispone en el Canon 12 de Ética Judicial, el Canon 3E(1) del Código Modelo de Conducta Judicial promulgado por la American Bar Association, y la disposición en la ley federal, 28 U. S. C. A. sec. 455. Conforme a este criterio, la inhibición procede por cualquier causa que razonablemente pueda arrojar dudas sobre la imparcialidad para adjudicar y en este sentido, la norma promueve la confianza pública en la imparcialidad del proceso judicial. El Juez Asociado expresó, además, que el criterio es objetivo porque exige analizar si la inhibición procede desde el punto de vista de un observador razonable, bien informado con todos los datos relevantes que estén a la luz pública y los que no lo están. En In re Colton Fontán, 2001 T.S.P.R. 115, el Juez Asociado Rivera Pérez denegó una moción de inhibición a la luz de este criterio al determinar que en ese caso un observador objetivo y razonable no tenía base razonable ni motivo fundado para dudar de su imparcialidad como Juez, al evaluar la solicitud de reinstalación al ejercicio de la abogacía presentada por el señor Pedro Colton Fontán. El Juez Asociado explicó que la solicitud de inhibición del Procurador General alegando apariencia de prejuicio o parcialidad no estuvo apoyada en aseveraciones específicas, detalladas y concretas sobre la verdad de los datos que estuvieron a la luz pública y los que no lo estuvieron.

Asimismo, en In re Campoamor Redín, 150 D.P.R. 138 (2000), el Tribunal Supremo censuró enérgicamente a un ex juez por violar los Cánones 11 y 12 de Ética Judicial de 1977 por anunciar como testigo a un licenciado en un caso personal, luego intervenir como juez en unos casos en los que dicho abogado representaba a unos acusados. El Tribunal determinó que el ex juez violó los antedichos cánones, aun cuando no hubiese adjudicado derecho alguno que favoreciera a los clientes del abogado, porque se colocó en una posición en que su imparcialidad pudo ser razonablemente cuestionada. El Tribunal expresó que la imprudencia del juez lesionó la confianza pública en el sistema de justicia, ya que "debió velar porque la balanza en que se pesan los derechos de los ciudadanos esté libre de sospechas". También reiteró la doctrina establecida que dispone que "los jueces no deben aceptar encomiendas o labores que pongan en riesgo la imagen de imparcialidad y sobriedad que enaltece a la judicatura ni que arrojen dudas acerca de su capacidad para actuar con ecuanimidad". Además, tomando en consideración que los miembros de la judicatura también son abogados, el Tribunal concluyó que la conducta estuvo reñida con el Canon 38 del Código de Ética Profesional que postula que las abogadas y los abogados deben evitar hasta la apariencia de conducta impropia.

El inciso "i" del canon propuesto permite la inhibición o recusación de las juezas o los jueces por cualquier causa que pueda razonablemente arrojar dudas sobre su imparcialidad o que tienda a minar la confianza pública en el sistema de justicia. No obstante, las juezas y los jueces procurarán evitar que las partes litigantes en los pleitos utilicen indebidamente este inciso para lograr recusaciones con propósitos distintos de los que realmente están justificados.

Bajo el inciso "h" una representación legal ocurrida hace más de tres años no motivaría la inhibición de las juezas o de los jueces bajo este inciso, por considerarse remota. Sin embargo, independientemente del número de años, la inhibición no necesariamente procede cuando la representación legal se ofreció en un caso donde la jueza o el juez hubiese sido demandado anteriormente en su carácter oficial o en su carácter personal en el ejercicio de sus funciones oficiales al amparo de la Ley Núm. 9 de 26 de noviembre de 1975, según enmendada.

Aún cuando existe disparidad entre las jurisdicciones de Estados Unidos respecto al número de años a establecer como término, sí se ha reconocido la necesidad de establecerlo. Véase Annotated Model Code of Judicial Conduct, American Bar Association, 2004, página 203.

**PARTE III. OTRAS FUNCIONES JUDICIALES IMPUESTAS POR LEY**

**CANON 21. Celebración de Matrimonios**

Las juezas y los jueces celebrarán matrimonios cuando lo soliciten las personas interesadas y se cumpla con los requisitos de ley. Los celebrarán en el tribunal, en horas laborables y de tal forma que no se afecten las funciones judiciales. Únicamente en circunstancias extraordinarias y con la autorización del Juez Administrador o de la Jueza Administradora, podrán celebrarlos fuera del tribunal durante horas laborables. Evitarán, además, celebrarlos en el tribunal fuera del horario regular o especial de trabajo.

Las juezas y los jueces no cobrarán honorarios cuando celebren matrimonios en el tribunal, durante o fuera del horario regular o especial de trabajo. Esta prohibición se extiende a las juezas y a los jueces que tengan designaciones y horarios especiales. Sólo podrán cobrar honorarios cuando los celebren fuera de los tribunales y fuera de horas laborables, de conformidad con la ley.

Ningún juez o jueza se negarán a celebrar matrimonios en el tribunal ni promoverán de cualquier forma que se celebren fuera de horas laborables con el propósito de eludir la prestación de este servicio en forma gratuita.

**HISTORIAL**

El canon es nuevo y está basado en la Orden Administrativa emitida por el Juez Presidente el 30 de septiembre de 2000, Circular Núm. 81 de 4 de octubre de 2000 de la Oficina de Administración de los Tribunales. La Orden Administrativa dispone las normas que regirán los aspectos de las funciones no judiciales que la ley asigna a los miembros de la judicatura. Una de estas funciones es la celebración de matrimonios.

**COMENTARIOS**

Este canon aplica a todos las juezas y los jueces del Tribunal de Primera Instancia y del Tribunal de Apelaciones, de conformidad con la Orden Administrativa emitida por el Juez Presidente el 30 de septiembre de 2000.

La Orden Administrativa está en armonía con el Artículo 81 del Código Civil, 31 L.P.R.A. 249, que establece que las juezas y los jueces tienen la obligación de celebrar matrimonios libre de costo para las personas interesadas en contraerlos. Por excepción, el Artículo 81 permite cobrar honorarios cuando el matrimonio sea celebrado fuera de la zona urbana del municipio en que reside el juez o la jueza o cuando sea celebrado antes de las nueve de la mañana o después de las cinco de la tarde.

El canon permite a las juezas y a los jueces celebrar matrimonios fuera del tribunal en horas laborables, pero únicamente en circunstancias extraordinarias justificadas, como lo sería, por ejemplo, un matrimonio in articulo mortis. En tales circunstancias, se requiere, además, la autorización previa de la Jueza Administradora o del Juez Administrador, lo cual permitirá que se puedan realizar las coordinaciones administrativas necesarias sin que se afecte el calendario de casos asignados a las juezas o a los jueces. Además, de conformidad con el canon, no se podrá cobrar honorarios por celebrar estos matrimonios.

La última oración del canon está dirigida a evitar conductas que eludan la obligación que tienen todas las juezas y los jueces de prestar este servicio en forma gratuita. A tal fin, debe quedar claro que los miembros de la judicatura tienen la obligación de hacer espacio en sus calendarios de casos asignados para cumplir con esta norma.

## CANON 22. Funciones Electorales

Las juezas y los jueces desempeñarán las funciones electorales que les sean asignadas por ley, libres de influencias político-partidistas. En el ejercicio de tales funciones, cumplirán con los Cánones de Ética Judicial.

El desempeño de funciones electorales no releva a las juezas y a los jueces del cumplimiento de sus deberes judiciales y administrativos en la sala a la que estén asignados, ni de cualquier otra responsabilidad hacia el Poder Judicial.

## HISTORIAL

Este canon corresponde al Canon VII de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios.

Estas normas éticas fueron establecidas originalmente en la Orden Administrativa del Juez Presidente de 30 de julio de 1975, ya que los Cánones de Ética Judicial de 1957 nada disponían sobre las funciones electorales de los miembros de la judicatura. Posteriormente fueron acogidas en el Canon VII de 1977.

## COMENTARIOS

El canon reitera los mismos principios del Canon VII de 1977. El primer párrafo fue reformulado con nuevo texto que sustituye la primera oración del Canon VII, con el fin de establecer de manera afirmativa la norma general de que las juezas y los jueces tienen la obligación de cumplir con las funciones electorales que les asigna la ley y de

su deber de cumplir con los Cánones de Ética Judicial mientras desempeñen tales funciones.  En esta nueva redacción se tomó en consideración la Orden Administrativa emitida por el Juez Presidente el 30 de septiembre de 2000, dirigida a las juezas y a los jueces mediante la Circular Núm. 81 de 4 de octubre de 2000 de la Oficina de Administración de los Tribunales.  La Orden aclara que los miembros de la judicatura ejercerán funciones electorales conforme dispone la Ley Electoral, Ley Núm. 4 del 20 de diciembre de 1997, y que ninguno de los jueces o de las juezas podrán asumir estas funciones si no han recibido previamente autorización por escrito de parte del Juez Presidente o de la Jueza Presidenta.

**PARTE IV.    ACTIVIDADES EXTRAJUDICIALES**

**CANON 23. Deber General**

Las juezas y los jueces se comportarán públicamente de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales no deshonren el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales.

**HISTORIAL**

Este canon es nuevo.  Su propósito es establecer una norma general precisa para regir el comportamiento público de las juezas y los jueces en el ámbito de sus actividades fuera del estrado.  Esta norma general es similar a la del Canon 4 A del Código Modelo de Conducta Judicial promulgado por la American Bar Association. Sustituye al primer párrafo del Canon XXIV de los Cánones de Ética Judicial de 1977, cuyo contenido expresa que aun cuando no es necesario ni deseable que los miembros de la judicatura vivan en el aislamiento, serán escrupulosos en evitar actuaciones que razonablemente puedan dar lugar a la impresión de que sus relaciones sociales, de negocios, familiares o de amistad influyen en sus determinaciones judiciales.

 **COMENTARIOS**

La norma general establecida en este canon hace innecesario el inciso "b" del Canon XXIV de 1977, que establece en forma ambigua e imprecisa la prohibición de asistir a lugares de dudosa reputación.  También hace innecesario el inciso "c" de dicho canon que prohíbe ingerir bebidas alcohólicas inmoderadamente en sitios públicos.


**Canon 24. Actividades Extrajudiciales**

Sin menoscabo del cumplimiento de sus deberes judiciales, las juezas y los jueces podrán participar en actividades extrajudiciales relacionadas con el Derecho, el ordenamiento jurídico, la administración de la justicia y en otras no relacionadas con el Derecho, tales como escribir y enseñar.  Podrán participar en esas actividades, con sujeción a estos cánones, fuera de horas laborables y también durante horas laborables en situaciones justificadas, siempre y cuando realicen los arreglos administrativos necesarios.

Cuando se expresen mediante ponencias orales o por escrito sobre algún asunto como parte de estas actividades extrajudiciales, evitarán que la audiencia erróneamente perciba que sus expresiones las hacen en su carácter oficial o a nombre o en representación de la Rama Judicial. Las juezas y los jueces deberán señalar al inicio de su ponencia

o escrito que sus expresiones responden a sus ideas, criterios u opiniones personales y que en modo alguno representan la posición oficial de la Rama Judicial.

## HISTORIAL

La segunda oración del Canon III de los Cánones de Ética Judicial de1977, que establece que las juezas y los jueces podrán participar en actividades que propendan al mejoramiento del Derecho y del sistema de impartir justicia, fue reubicada en el primer párrafo de este nuevo canon. Su contenido fue ampliado para establecer una norma similar a la del Canon 4 B del Código Modelo de Ética Judicial promulgado por la American Bar Association. Acoge, además, el Criterio Número I de los Criterios para Orientar el Ejercicio del Derecho a la Expresión Extrajudicial, establecidos por el Juez Presidente mediante la Circular Núm. 3 de 22 de agosto de 1994. El segundo párrafo es nuevo, para acoger el Criterio Número V de dichos criterios.

## COMENTARIOS

Este nuevo canon pretende estimular la participación de las juezas y los jueces en actividades extrajudiciales relacionadas con el campo del Derecho y la administración de la justicia. Promueve, además, que los miembros de la judicatura se involucren en otras actividades mediante las cuales puedan aportar al mejoramiento de la sociedad en su calidad de ciudadanas y ciudadanos. Igualmente lo promueve la norma del Canon 4 B del Código Modelo de Ética Judicial promulgado por la American Bar Association, que establece que las juezas o los jueces podrán escribir, disertar, enseñar y participar en actividades extrajudiciales relacionadas con el Derecho, el ordenamiento jurídico, la administración de la justicia y temas no relacionados con el Derecho, con sujeción a los requisitos establecidos en dicho Código. Al involucrarse en estas actividades extrajudiciales, y participar de manera recta, cordial, respetuosa y moderada, las juezas y los jueces contribuyen a erradicar percepciones negativas de la ciudadanía sobre la judicatura, tales como las de que carecen de sensibilidad, que viven ajenos y ajenas a la realidad de los problemas sociales, que asumen actitudes arrogantes al ejercer sus funciones o que desconocen el Derecho. Véase el Informe de la Comisión Futurista de los Tribunales, Visión en Ruta al Futuro, Volumen II, abril de 2000, páginas 2, 3, 4, 9,13, 32, 20, 57, 58,117 y 118.

La norma establecida en la segunda oración del primer párrafo de este canon garantiza que los asuntos judiciales queden debidamente atendidos cuando las juezas y los jueces participen en las actividades extrajudiciales permitidas. Proviene del Criterio Número I de los Criterios para Orientar el Ejercicio del Derecho a la Expresión Extrajudicial, Circular Núm. 3 de 22 de agosto de 1994. Dicho criterio establece que a tenor con el principio de que la atención y resolución de casos tiene prelación sobre cualquier otra actividad, se recomienda a jueces y a juezas que ejerzan su derecho a expresar públicamente sus ideas preferiblemente fuera de horas laborales o en su tiempo libre. También establece que en las situaciones apropiadas y con la autorización previa del (de la) Juez(a) Administrador(a) Regional o del (de la) Juez(a)

Presidente(a) cuando se requiera dispensa, se podrán hacer expresiones extrajudiciales durante horas laborables, siempre y cuando se tomen las medidas necesarias para evitar que se desatiendan las labores judiciales.

La norma del segundo párrafo responde al principio expresado en el Preámbulo de estos cánones de que los miembros de la judicatura tienen el deber de preservar la imparcialidad del sistema judicial. Proviene del Criterio Número V de los Criterios para Orientar el Ejercicio del Derecho a la Expresión Extrajudicial. Dicho criterio recomienda, para evitar que la comunidad erróneamente perciba que los jueces o las juezas que se expresan en la actividad extrajudicial lo hacen como portavoz de la Rama Judicial, que al inicio de la ponencia oral o escrita se indique que las declaraciones responden a ideas personales sobre el asunto y que de ningún modo representan la posición oficial de la Rama Judicial.

## CANON 25. Sugerencias para mejorar el Derecho; Consultas; Vistas Públicas

El Juez Presidente o la Jueza Presidenta será, de ordinario, el o la portavoz oficial de la Rama Judicial sobre todo planteamiento relativo al mejoramiento del sistema judicial.

Los jueces y las juezas podrán comparecer a vistas públicas de un organismo del Poder Ejecutivo o Legislativo cuando sean debidamente citados sobre asuntos relacionados con el Derecho, el ordenamiento jurídico o la administración de la justicia, siempre que su experiencia en la Rama Judicial pueda constituir una aportación significativa y previa notificación al Juez Presidente o la Jueza Presidenta. También podrán comparecer ante tales foros cuando se trate de asuntos que involucren sus intereses como ciudadanos. En dichas comparecencias harán constar que sus comentarios constituyen su opinión personal y no reflejan la posición oficial de la Rama Judicial.

Las juezas y los jueces no atenderán consultas de las Ramas Ejecutiva o Legislativa o de sus funcionarias o funcionarios.

## HISTORIAL

El contenido del tercer párrafo del Canon III de los Cánones de Ética Judicial de 1977, que ordena canalizar a través de la oficina del Juez Presidente o de la Jueza Presidenta todo planteamiento en torno al mejoramiento del sistema judicial, fue reubicado en el segundo párrafo de este nuevo canon. El segundo y tercer párrafo son nuevos, para establecer una norma parecida a la del Canon 4 C (1) de los Cánones Modelo de Conducta Judicial promulgados por la American Bar Association.

**COMENTARIOS**

El canon acoge, en términos generales, la norma del Canon 4 C (1) de los Cánones Modelo de Conducta Judicial promulgados por la American Bar Association, que permite a los jueces y las juezas comparecer a vistas públicas de las Ramas Ejecutiva o Legislativa sobre asuntos relacionados con el Derecho, el ordenamiento jurídico o la administración de la justicia, aunque les requiere haber sido citados. También acoge la norma que les permite, a manera de excepción, comparecer representándose a sí mismos en asuntos relacionados con ellos o con sus intereses. Esta norma regula aspectos de la expresión extrajudicial que necesitaban ser atendidos en nuestros cánones, con directrices específicas. El canon no limita la facultad de cualquier juez o jueza de expresarse en su carácter de Presidente o Presidenta de la Asociación de la Judicatura ante el foro correspondiente.

**CANON 26. Cargos y Encomiendas Incompatibles**

Las juezas y los jueces no aceptarán posiciones, cargos o encomiendas que sean incompatibles con sus responsabilidades judiciales, o que entorpezcan el descargo adecuado de sus deberes al restarle tiempo de sus funciones judiciales, tales como:

a.      toda posición, cargo o encomienda que lesione la imagen de imparcialidad de la Judicatura o que provoque duda razonable sobre la capacidad de las juezas o de los jueces para actuar con imparcialidad en asuntos específicos que pudieran ser llevados ante su consideración;

b.    toda actividad o gestión que origine notoriedad indeseable;

c.    toda actividad o gestión en las que el prestigio o la autoridad de su cargo pueda ser percibida como influencia indebida, ya sea ante foros gubernamentales o privados;

d.     cualquier puesto en las Ramas Ejecutiva o Legislativa, en los gobiernos municipales o en cualquier otro organismo del Estado;

e. cualesquiera de los siguientes cargos, funciones o actividades:

1.       Presidenta o Presidente, Directora Ejecutiva o Director Ejecutivo o funcionaria o funcionario del Colegio de Abogados de Puerto Rico;

2.        miembro de la Junta de Gobierno del Colegio de Abogados o de las directivas de las delegaciones de distrito y organismos locales de dicha institución;

3.   miembro de cualquier comisión del Colegio de Abogados, salvo aquellas que no planteen conflicto con estos cánones;

4. miembros, directa o indirectamente, de campañas electorales de candidatas o candidatos que aspiren a ocupar cargos en el Colegio de Abogados o en cualquier otra agrupación de abogadas o abogados, en sus juntas de gobierno o en las directivas de sus delegaciones de distrito y organismos locales. Salvo el ejercicio de su derecho al voto, no apoyarán a candidata o candidato alguno para dichas posiciones.

5.   presidente o presidenta, director o directora, funcionario o funcionaria de cualquier otra agrupación o asociación de abogados y abogadas en Puerto Rico, salvo que puede pertenecer a alguna comisión de éstas que no plantee conflicto con estos cánones;

6. presidenta o presidente, directora o director, o funcionaria o funcionario de cualquier organismo público;

7. tutor o tutora, albacea, síndico, administradora o administrador, o cualquier posición fiduciaria, excepto cuando se trate de asuntos relacionados con sus parientes, hasta el tercer grado de consanguinidad o afinidad;

8. árbitra o árbitro, mediadora o mediador o amigable componedora o componedor, en entidades públicas o privadas, excepto cuando la ley le asigne tales funciones.

## HISTORIAL

Este canon corresponde al Canon VIII de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género.  El Canon VIII de 1977 incorpora las normas del Canon XV de los Cánones de Ética Judicial de 1957  y las normas que prohíben pertenecer a comisiones del Colegio de Abogados y participar en campañas o apoyar públicamente a candidatas o candidatos a cargos electivos en

el Colegio o en cualquier otra agrupación de abogados en Puerto Rico. En la anterior revisión también se acogió en el Canon VIII la prohibición de participar en actividades de naturaleza fiduciaria, norma que está basada en el Canon Modelo 4 E de los Cánones Modelo de Conducta Judicial promulgados por la American Bar Association. Además, se le incorporó la norma del Canon 4 F Modelo sobre prestación de servicios en calidad de árbitro o mediador.

El contenido de este canon permanece igual como resultado de la actual revisión, excepto por algunos cambios de estilo que convierten la cuarta y tercera oraciones del primer párrafo del Canon VIII de 1977 y el segundo párrafo, en los incisos "a", "b" y "d"; y para ampliarlo en los incisos "c" y "e.4."

## COMENTARIOS

Las prohibiciones que establece el canon son restricciones que limitan el ejercicio de derechos que le asisten a todo ciudadano o ciudadana al amparo de la Constitución y a las que todos los jueces y juezas acceden libre y voluntariamente al ser nombrado en su cargo. Con ellas se pretende garantizar la corrección y la apariencia de corrección de toda actuación judicial, de modo que se preserve la confianza ciudadana en la independencia e imparcialidad en la administración de la justicia. Se pretende, además, evitar que la Judicatura se involucre en actividades que originen notoriedad indeseable.

El canon reitera la primera oración del Canon VIII de Ética Judicial de 1977, que es una prohibición de carácter general dirigida a evitar que las juezas y los jueces acepten posiciones, cargos o encomiendas que sean incompatibles con sus responsabilidades judiciales. Los incisos "a", "b" y "c" mencionan las categorías de posiciones o cargos que las juezas o los jueces no deben aceptar, al establecer la incompatibilidad de toda posición, cargo o encomienda que lesione la imagen de imparcialidad de la Judicatura o que origine la creencia razonable de que las juezas o los jueces actuarán con parcialidad o prejuicio en asuntos que puedan ser llevados ante su consideración. En términos generales, la participación en gestiones privadas debe limitarse a aquellas que no le resten tiempo a las funciones judiciales o que pongan en riesgo la imagen de imparcialidad y sobriedad que enaltece a la judicatura.

El inciso "b" reitera la norma del Canon VIII de 1977 que declara incompatible toda actividad o gestión que origine notoriedad indeseable. El inciso "c" amplía el texto del Canon VIII para declarar incompatible toda actividad o gestión en la que el prestigio o autoridad del cargo judicial pueda ser percibida como influencia indebida, independientemente de que tal actividad o gestión se realice ante foros gubernamentales o privados. Esta prohibición del inciso "c" debe interpretarse conjuntamente con la norma del Canon 25 de estos cánones, segundo párrafo, que prohíbe a los jueces y a las juezas comparecer a vistas públicas ante algún organismo del Poder Ejecutivo o Legislativo, excepto cuando se les cite sobre asuntos relativos al

34

Derecho, al ordenamiento jurídico o la administración de la justicia, o para representar sus intereses privados en calidad de ciudadano.

Los incisos "e.1", "e.2", "e.3","e.5" y "e.6" que corresponden a los incisos "a", "b", "c", "d" y "e" del Canon VIII de 1977, enumeran las posiciones o cargos que, dentro de la estructura administrativa y de gobierno del Colegio de Abogados, de otros organismos públicos y de asociaciones de abogadas y abogados, son incompatibles con las funciones judiciales.

La nueva redacción de los incisos "e.3" y "e.5" (incisos "c" y "d" del Canon VIII de 1977), al ampliar la norma allí expresada, permite como excepción que las juezas o los jueces colaboren en calidad de miembro de cualquier comisión del Colegio de Abogados o de cualquier comisión de otra agrupación o asociación de abogadas y abogados en Puerto Rico, siempre y cuando ello no plantee conflicto con estos cánones. La utilización de esta norma de excepción requerirá de todos los jueces y todas las juezas que, previo a tomar su decisión de pertenecer a alguna comisión en la manera permitida, realice una evaluación cuidadosa, si los trabajos de la comisión se relacionan directamente con el mejoramiento de las leyes, el sistema legal o la administración de la justicia y si su participación en la comisión arrojaría duda razonable sobre su capacidad para actuar con imparcialidad en el desempeño de las funciones judiciales. Criterios como los siguientes apuntan a que la participación no representaría conflicto con los cánones: (1) los trabajos están dirigidos o se relacionan con la manera en que los tribunales funcionan para impartir justicia equitativa e imparcial; (2) se adoptan posiciones claras sobre el sistema legal y asuntos que impactan directamente a la Rama Judicial; (3) los miembros representan a sectores diversos con distintos puntos de vista; (4) la estructura permite que los jueces o las juezas participen únicamente en asuntos relacionados con el mejoramiento de las leyes, el sistema legal y la administración de la justicia.

Por el contrario, los siguientes criterios son indicio de que la participación en una comisión podría representar conflictos con los cánones, cuando la comisión: (1) tiene un objetivo ulterior que no es el mejoramiento del sistema legal, sino un fin social, político o cívico; (2) aboga por los derechos de determinadas personas en casos específicos; (3) está compuesta por miembros que representan un solo punto de vista; (4) tiene algún miembro que comparecerá a la sala de una jueza o de un juez como parte o testigo; (5) se dedica a brindar ayudas, guías o apoyo a personas que participan en algún proceso judicial; (6) aboga por legislación con el fin de beneficiar a una causa o grupo particular.

El inciso "e.4" del canon propuesto reitera la norma del Canon VIII de 1977 que prohíbe a las juezas y a los jueces participar directa o indirectamente en campañas eleccionarias de candidatos o candidatas a cargos en el Colegio de Abogados o en otras agrupaciones de abogadas o abogados. Reconoce, en cambio, su derecho a votar en los procesos eleccionarios de estas organizaciones.

Los incisos "e.7" y "e.8" (incisos (f) y (g)) del Canon VIII de 1977 pretenden evitar la participación de las juezas y los jueces en procedimientos cuasi judiciales o de mediación en los cuales la autoridad de su cargo pudiera originar influencia indebida.

## CANON 27. Prohibición del Ejercicio Privado de la Abogacía y la Notaría

Las juezas y los jueces no ejercerán la abogacía ni la notaría, excepto las funciones de autenticación y autorización de documentos que les asigna la ley. Tampoco actuarán como asesores o asesoras legales de individuos o entidades públicas o privadas, independientemente de que conlleve o no remuneración.

Se abstendrán de recomendar abogadas o abogados para que brinden representación legal ante cualquier foro o servicios profesionales para cualquier gestión, excepto cuando lo hagan como parte del manejo de asuntos de familiares hasta el cuarto grado de consanguinidad o afinidad.

### HISTORIAL

Este canon corresponde al Canon IX de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, con algunos cambios de estilo. La prohibición de ejercer la abogacía no formaba parte de los anteriores Cánones de Ética Judicial de 1957, sino que fue incluida por primera vez en el Canon IX para acoger la norma similar del Canon 4 G del Código Modelo de Conducta Judicial promulgado por la American Bar Association. En la revisión actual se amplía la primera oración del canon para aclarar el texto y se establece una nueva norma en la segunda oración.

### COMENTARIOS

Este canon establece una prohibición absoluta del ejercicio de la abogacía y de la notaría, dirigida a evitar conflictos de intereses o la apariencia de parcialidad y actuación impropia en el ejercicio de la funciones judiciales. El ejercicio de la abogacía y de la notaría es incompatible con las funciones judiciales, por lo que la prohibición también ha sido establecida en el Artículo 2.015 de la nueva Ley de la Judicatura, Ley Núm. 201 de 22 de agosto de 2003.

La prohibición no se extiende a las funciones de autenticación y autorización de documentos, conforme dispone la Ley de Marzo 12 de 1908, según enmendada, 4 L.P.R.A. secs. 890, 892, 892(a). En cuanto a la obligación de rendir informes mensuales sobre la autorización de estos affidávits o declaraciones de autenticidad (4 L.P.R.A. 892(a)), el Memorando Núm. 174 de 16 de febrero de 1996 instruye a los

miembros de la Judicatura a remitir dichos informes a la Directora Administrativa o al Director Administrativo de los Tribunales en el formulario correspondiente.

La prohibición que se establece en la segunda oración del canon es nueva y pretende evitar que las juezas y los jueces participen como asesoras legales o asesores legales, ya sea de individuos o de entidades públicas o privadas, independientemente de que la asesoría conlleve o no remuneración. La prohibición parte de la premisa de que el asesoramiento legal constituye un ejercicio de la abogacía y de que los miembros de la judicatura, si realizan esta actividad, se podrían colocar en la delicada posición de tener que emitir juicio sobre controversias que potencialmente pudieran ser llevadas ante foros adjudicativos. Tal actuación podría minar la confianza en la imparcialidad de la jueza o del juez y de la judicatura en general respecto a cualquier asunto que pueda ser sometido ante los tribunales, particularmente si el asesoramiento legal ocurre en el contexto de alguna discusión pública. Asimismo, la opinión de las juezas o de los jueces en el contexto de una discusión ante un foro adjudicativo o deliberativo, apoyada por el prestigio y autoridad de su cargo, podría ser percibida como influencia indebida.

La prohibición no está reñida con la función educativa y de orientación que, sin constituir asesoría, todos los jueces y todas las juezas deben realizar. Tampoco impide formar parte de asociaciones de las juezas y los jueces que promuevan la capacitación profesional de la judicatura ni prohíbe participar en actividades que se apartan del contexto jurídico, siempre y cuando la participación esté acorde con éste y los demás cánones.

El segundo párrafo reitera la segunda oración del Canon IX de 1977 que prohíbe recomendar a abogadas o abogados para la prestación de servicios profesionales en causas particulares. Esta prohibición parte de la premisa de que una recomendación de las juezas o los jueces en torno a la idoneidad de una abogada o abogado para atender determinados asuntos puede ser percibida por las ciudadanas y los ciudadanos como una invitación indebida a utilizar unos servicios profesionales en particular. Tal actuación puede dar la impresión de que las juezas o los jueces "confía más en el criterio de un abogado que en el de otro, independientemente de que se trate de un asunto en el que dicho juez o jueza no intervendrá directamente". In re Suárez Marchán 159 D.P.R. ___ (2003). La prohibición pretende, además, evitar que las ciudadanas y los ciudadanos se vean compelidos y compelidas a seguir recomendaciones en torno a servicios profesionales por el mero hecho de provenir de un miembro de la judicatura.

Esta norma se amplía para establecer una excepción a la prohibición con el fin de permitir que se pueda hacer tal recomendación cuando se trate del manejo de asuntos de familiares de los jueces y las juezas, dentro del cuarto grado de consanguinidad o afinidad. La excepción reconoce que existen circunstancias inevitables en que las juezas y las jueces se involucran de manera incidental en los asuntos legales de sus familias, amistades o los propios, ya sea aconsejando, redactando o revisando documentos, sin que su participación conlleve remuneración o

una relación de abogado y cliente. En tales circunstancias, las juezas y los jueces siempre tendrán presente la prohibición absoluta de este canon a fin de evitar que su participación trascienda los límites de la informalidad y configure la conducta prohibida.

**CANON 28.  Actividades Políticas Prohibidas**

Las juezas y los jueces se abstendrán de participar en el proceso político, sin menoscabo de su derecho al sufragio, a sus propias ideas sobre cuestiones políticas y a los deberes y funciones que les asignan las leyes y los reglamentos electorales.

Sin que la siguiente enumeración excluya otras actividades, que por su carácter político le están vedadas, las juezas y los jueces no podrán:

a. participar en campañas políticas de clase alguna o en reuniones, tertulias, asambleas, convenciones, primarias u otros actos de carácter político-partidista;

b. ocupar cargos en organismos o partidos políticos;

c. aportar dinero, en forma directa o indirecta, a candidatos o candidatas, organismos o partidos políticos;

d. endosar candidatos o candidatas para posiciones electivas o de nombramiento gubernamental o líderes políticos;

e. hacer expresiones, comentarios o manifestaciones públicas sobre asuntos o actos de naturaleza político-partidista;

f. mantener relaciones estrechas que les identifiquen o que proyecten ante el público que están afiliados o afiliadas a un partido, organización o movimiento  político;

g. participar en reuniones con funcionarios o funcionarias gubernamentales para discutir asuntos de índole político-partidista;

h. entablar polémicas con candidatos o candidatas, o  líderes políticos;

i. fomentar los intereses de organismo o partido  político alguno;

**HISTORIAL**

Este canon corresponde, en parte, al Canon XIII de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de lenguaje neutral con relación al género. El Canon XIII proviene a su vez, en parte, del anterior Canon XVIII de los Cánones de Ética Judicial de 1957.

La primera oración del Canon XIII de 1977, que establece el principio de que las juezas y los jueces deben proteger y promover la independencia del poder judicial como factor de equilibrio en la estructura gubernamental de nuestro sistema democrático, fue eliminada de este canon para acoger dicho principio de otra manera en el nuevo Canon 2. Como resultado de la revisión fue modificado el canon en cuanto a estilo y los incisos "a" y "d", por su contenido similar, fueron consolidados en un nuevo inciso "a". La última oración fue eliminada. Como resultado de la revisión de estilo, se eliminó la parte del inciso "i" que alude al derecho a defenderse de ataques abusivos a la persona y honra en el contexto político. También fue eliminada la penúltima oración donde se expresa que las juezas y los jueces deben estar y sentirse exentos de toda influencia política ni deben dar base a la creencia de que sus ideas políticas influyen en el cumplimiento de sus funciones judiciales, porque ese contenido está acogido ahora de forma abreviada en la primera oración de este canon.

**COMENTARIOS**

Al inciso "f", que corresponde al inciso "g" del Canon XIII de 1977, se le añadió la frase "o que proyecten ante el público", con el fin de aclarar la prohibición en cuanto a que la misma se refiere además a proyectar ante la comunidad que se está afiliado o afiliada a un partido político al mantener relaciones estrechas con figuras o líderes políticos. La norma del inciso "f" no implica que no pueda existir una relación personal estrecha entre un miembro de la judicatura y un político, como por ejemplo, una relación de amistad que ha sido cultivada por largo tiempo o cuando se trata de que las juezas o los jueces están casados con una figura política. Su objetivo es evitar que los miembros de la judicatura empañen la imagen de imparcialidad del sistema judicial con conducta que crea la impresión de que están sujetos a la influencia de personas cuya notoriedad se debe a la política partidista.

**CANON 29. Gestiones para Obtener Nombramientos o Cargos**

Las juezas y los jueces se abstendrán de realizar gestiones indebidas para lograr ascensos o para obtener una renominación en la Judicatura. También se abstendrán de realizar gestiones indebidas para obtener cualquier otro cargo público.

Esta prohibición incluye todo tipo de gestión indebida tanto en beneficio de las juezas y de los jueces como a favor de otra persona, pero excluye los trámites oficiales ante los organismos que asesoran al Poder Ejecutivo y al Poder Legislativo sobre nombramientos judiciales.

**HISTORIAL**

Este canon corresponde al Canon XXII de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género. El Canon XXII de 1977 a su vez, acoge el anterior Canon XVII de los Cánones de Ética Judicial de 1957 en su primera oración, sustituyendo la palabra "campaña" por la de "gestiones", junto con la norma del segundo párrafo que aclara que la prohibición se extiende a todo tipo de gestión para el beneficio propio o de otras personas, excepto los trámites oficiales para obtener el nombramiento judicial.

El canon fue revisado en cuanto a estilo. La norma de la primera oración fue ampliada.

**COMENTARIOS**

La finalidad de este canon es prohibir que las juezas o los jueces realicen gestiones indebidas encaminadas a lograr ascensos o una renominación en la Judicatura, o para obtener otros cargos públicos. Como resultado de la revisión actual, la norma de la primera oración fue ampliada para prohibir también las gestiones que se realicen para obtener una renominación en la judicatura y para aclarar el concepto "gestión", como gestión indebida. La prohibición excluye los trámites oficiales que se realizan en los organismos que asesoran a los Poderes Ejecutivo y Legislativo en cuanto a los nombramientos judiciales, pues obviamente el logro de un ascenso o renominación en la judicatura requiere que se haya tramitado previamente una solicitud formal de las juezas o de los jueces en la entidad administrativa correspondiente.

**CANON 30. Influencias Indebidas**

En sus actividades extrajudiciales y fuera de sala, las juezas y los jueces no incurrirán en conducta o actuación que dé la impresión de que ejercen o pretenden ejercer influencia indebida en el descargo de las funciones judiciales de otros jueces y juezas, así como en la función ministerial de cualquier funcionario público. Tampoco influirán directa ni indirectamente en el ánimo de otros jueces y juezas para obtener un trato privilegiado al litigar causas personales.

Las juezas y los jueces no darán la impresión de que alguna persona tiene influencia sobre ellos. Además procurarán que ningún empleado o empleada o funcionario o funcionaria de la Rama Judicial dé la impresión de tenerla.

**HISTORIAL**

Este canon corresponde al Canon XXIII de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999, para dotar su redacción de neutralidad con relación al género. Su precedente fue el segundo párrafo del anterior Canon VIII de los Cánones de Ética Judicial de 1957.

La última oración del Canon XXIII, que establece la norma sobre comparecencia de juezas y jueces como partes o como testigos de reputación en procedimientos judiciales, fue reubicada en el nuevo Canon 31.

**COMENTARIOS**

Este canon prohíbe a las juezas y los jueces ejercer influencia indebida en el ánimo de sus compañeros jueces y juezas, ya sea en forma directa o indirecta, tanto para beneficio personal o para beneficio de otras personas. También prohíbe ejercer influencia indebida en la función ministerial de otros funcionarios públicos. Impone, además, el deber de procurar que las empleadas y los empleados y las funcionarias y los funcionarios de la Rama Judicial no incurran en conducta que pueda motivar tal creencia. Las prohibiciones parten de la premisa de que el cargo judicial goza públicamente de prestigio e influencia y que la opinión de las juezas y los jueces, expresada tanto en el estrado como fuera de éste, goza de autoridad y respeto en la sociedad. En atención a ello, el canon impone la obligación de evitar dar la impresión de los miembros de la Judicatura ejercen en forma indebida su autoridad e influencia.

**CANON 31.   Juezas y  Jueces como Partes o Testigos**

Cuando las juezas y los jueces comparezcan como partes ante el foro judicial o ante un foro administrativo adjudicativo, estarán asistidos por un abogado o abogada.

Las juezas y los jueces no comparecerán por iniciativa propia a procesos judiciales como testigos de reputación.

**HISTORIAL**

Este canon es nuevo. Su segunda oración es la última oración del Canon XXIII de los Cánones de Ética Judicial de 1977, que fue reubicada en este canon.

**COMENTARIOS**

Se creó este nuevo canon para atender dos situaciones: (1) cuando algún miembro de la judicatura comparece como parte ante el tribunal o ante un organismo administrativo con facultades adjudicativas y, (2) cuando comparece como testigo de reputación. Ambas comparecencias pueden darse en un procedimiento adversativo o ex parte.

La primera oración del canon responde al interés de evitar que se empañe la imagen de imparcialidad de la judicatura con la impresión de que se ejerce influencia en el ánimo del juzgador de los hechos de un caso o se pretende tomar ventaja del cargo judicial, cuando los jueces o las juezas comparecen como parte ante ese juzgador, quien también es su compañero juez o jueza. Véase Bonilla v. Citibank, 116 D. P. R. 705, 709 (1985), nota número 3 en la cual el Tribunal Supremo expresa insatisfacción porque el demandante recurrido, quien era juez, asumió su propia representación ante el tribunal de instancia, lo cual no se justifica porque los miembros de la judicatura deben ser cautelosos cuando comparecen como partes de un pleito, para evitar que el público interprete que se toma ventaja del cargo judicial. De igual forma puede interpretarse que se toma ventaja del cargo judicial cuando se comparece por derecho propio ante un organismo administrativo con funciones adjudicativas.

La prohibición de que las juezas y los jueces participen voluntariamente como testigos de reputación, tanto en los tribunales del Estado Libre Asociado de Puerto Rico como en los tribunales federales, cumple el propósito de evitar exponer a los jueces y a las juezas en la difícil situación de tener que adjudicar la credibilidad de otros jueces y juezas. Se permite, por excepción, el testimonio judicial compelido. Véase, In re Comunicación Juez Pérez Giménez, 112 D.P.R. 683 (1982).

## CANON 32. Actividades Extrajudiciales Remuneradas

Las juezas y los jueces no prestarán servicios extrajudiciales remunerados, salvo en actividades que no sean incompatibles con estos cánones y cuya prestación no afecte adversamente el fiel y diligente desempeño de sus labores y funciones judiciales. Las juezas y los jueces que interesen prestar servicios extrajudiciales remunerados, deberán solicitar anualmente una dispensa al Juez Presidente o Jueza Presidenta del Tribunal Supremo.

La fuente de dicha remuneración o la manera en que se hacen los pagos no dará base a la creencia de que se ejerce o pretende ejercer influencia indebida en las juezas y los jueces. La remuneración recibida no excederá la que bajo iguales circunstancias correspondería razonablemente a una persona que no fuera miembro de la Judicatura.

**HISTORIAL**

Este canon corresponde al inciso "a" del Canon X de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género. Los anteriores Cánones de Ética Judicial de 1957 nada disponían para reglamentar las actividades extrajudiciales remuneradas de la judicatura.

El inciso "b" del Canon X fue reubicado en el nuevo Canon 37.

**COMENTARIOS**

La prohibición sobre la prestación de servicios extrajudiciales remunerados se disponía en el inciso "a" del Canon X de 1977 conjuntamente con las normas del inciso "b" sobre divulgación financiera. Ambas disposiciones, por estar dirigidas a atender aspectos de distinta naturaleza, fueron distribuidas en cánones separados para lograr una mejor coherencia y consistencia interna en la estructura total de este cuerpo de cánones. La norma que establece la obligación de presentar los informes de divulgación financiera fue reubicada en el nuevo Canon 37.

El texto propuesto corresponde íntegramente al inciso "a" del Canon X, al cual se le realizaron algunas modificaciones de estilo. El contenido es similar al texto pertinente del Canon 4 H (1) y H (1)(a) del Código Modelo de Ética Judicial promulgado por la American Bar Association, con una redacción distinta.

**CANON 33. Uso de Personal para Beneficio Propio**

Los jueces y las juezas no utilizarán los servicios de empleadas, empleados, funcionarias o funcionarios de la Rama Judicial para asuntos no oficiales.

Además, se abstendrán de utilizar para su beneficio personal los servicios de empleadas, empleados, funcionarias o funcionarios de cualquier agencia, municipio o entidad gubernamental.

**HISTORIAL**

La última oración del Canon XXIV de los Cánones de Ética Judicial 1977, fue convertida en este nuevo canon. Igualmente, el resto del contenido de dicho canon fue distribuido en cánones separados, como resultado de la revisión actual de las normas sobre comportamiento público. Destacar de manera independiente cada aspecto ético del comportamiento público de la judicatura cumple el propósito de que el manejo de estas normas sea más ágil y accesible para los miembros de la judicatura.

**COMENTARIOS**

Normas similares que establecen esta prohibición se disponen en el inciso "c" del Artículo 3.2 de la Ley de Ética Gubernamental, 3 L.P.R.A. 1822, para las funcionarias y los funcionarios y empleadas y empleados de la Rama Ejecutiva del gobierno; y para los funcionarios y empleados de la Rama Judicial, en el Artículo 22(d) del Reglamento de la Administración del Sistema de Personal de la Rama Judicial, 4 L.P.R.A. Ap. XIII.

**PARTE V. COMPORTAMIENTO PÚBLICO**

**CANON 34. Actividades Sociales**

Las juezas y los jueces no aceptarán invitaciones para compartir en actividades sociales cuando provienen de abogadas y abogados que con frecuencia comparecen ante la sala que presiden. Tampoco aceptarán invitaciones de personas o abogados y abogadas cuyos intereses hayan estado, estén o sea probable que vayan a estar ante la consideración de las juezas o de los jueces. Se exceptúan las actividades sociales que organiza el Colegio de Abogados, sus delegaciones y otras organizaciones profesionales de abogados, educativas y culturales, y las ceremonias organizadas por entidades bona fide para reconocer a las juezas o a los jueces por méritos literarios, artísticos, cívicos, académicos, deportivos, científicos o aportaciones jurídicas.

**HISTORIAL**

Las prohibiciones de los incisos "a" y "f" del Canon XXIV de los Cánones de Ética Judicial de 1977 fueron agrupadas en este nuevo canon. Ambas normas, que atienden aspectos éticos relacionados con las actividades sociales de los miembros de la judicatura, fueron separadas del Canon XXIV como resultado de su revisión.

El primer párrafo del Canon XXIV fue eliminado, pues el principio contenido en el mismo fue integrado en el Preámbulo de estos cánones.

**COMENTARIOS**

La prohibición establecida en este canon, cuya finalidad es proteger la imparcialidad del sistema judicial, está dirigida principalmente a evitar actuaciones de las juezas y los jueces del Tribunal de Primera Instancia que puedan dar la impresión al público de que se ejerce influencia indebida en las determinaciones judiciales a través de las actividades o relaciones sociales.

**CANON 35. Aceptación de Regalos**

Las juezas y los jueces no aceptarán regalos, legados, favores o préstamos de persona alguna, e instarán a los familiares que residan con ellas o con ellos a que tampoco los acepten, a menos que se trate de:

a. un regalo relacionado con algún homenaje público; libros, grabaciones en cintas u otros recursos suplidos gratuitamente por compañías editoriales para uso oficial; una invitación cursada a la jueza o al juez y a su cónyuge o

invitado o invitada para que asistan a alguna actividad relacionada con las funciones del Colegio de Abogados o con alguna agrupación profesional de abogados dedicada al mejoramiento del derecho, del ordenamiento jurídico o de la administración de la justicia;

b.   un regalo, distinción o beneficio relacionado con el negocio, la profesión u otra actividad independiente del cónyuge o de algún familiar que resida con la jueza o el juez, incluso regalos, distinciones y beneficios que sean para uso del cónyuge u otro miembro de la familia de la jueza o del juez, siempre que no se pueda razonablemente interpretar que tal regalo, distinción o beneficio tiene el propósito de influir en el desempeño de las funciones judiciales de la jueza o del juez;

c.   muestras normales de hospitalidad social;

d.   un regalo, legado, favor o préstamo de algún pariente o alguna parienta, o de algún amigo íntimo o alguna amiga íntima, cuyo interés en algún caso requeriría, de cualquier manera, la inhibición de la jueza o del juez;

e.   un préstamo de alguna institución financiera otorgado en el curso normal de sus negocios conforme a los mismos términos que se ofrecerían por lo general a personas que no son juezas o jueces;

f.   una beca o premio conferido conforme a los mismos términos y fundamentada en los mismos criterios aplicables a los demás candidatos y candidatas;

g.   algún regalo, legado, favor o préstamo, siempre que: el o la donante no sea parte en un pleito que esté ante la consideración de la jueza o del juez, ni sea alguna otra persona que haya comparecido o que es probable que comparezca, o cuyos intereses hayan estado o es probable que vayan a estar ante la consideración de éste, y si la jueza o el juez informa sobre dicho regalo, legado, favor o préstamo de la misma manera que informan sobre cualquier remuneración conforme a lo dispuesto en el Canon 37.

**HISTORIAL**

Este canon es nuevo, excepto su primera oración, cuyo contenido acoge la prohibición establecida en los incisos "d" y "e" del Canon XXIV de los Cánones de Ética Judicial de 1977. Como resultado de la revisión del Canon XXIV, sus normas fueron reubicadas en cánones separados.

**COMENTARIOS**

Los incisos "a" al "g" acogen un contenido similar al del Canon 4 D(5) del Código Modelo de Ética Judicial promulgado por la American Bar Association.

**CANON 36. Actividades Económicas**

Las juezas o los jueces no podrán:

a. utilizar su poder ni el prestigio de su cargo para obtener beneficios personales o para fomentar el éxito de negocios o actividades comerciales o económicas personales, familiares o de otras personas u organizaciones;

b. participar en negocios, actividades o transacciones comerciales, económicas o financieras que conflijan con sus deberes o que previsiblemente pudieran originar conflictos con sus funciones judiciales;

c. intervenir como juez o jueza en pleitos cuyo resultado pudiera afectar sustancialmente un interés económico o financiero personal o familiar;

d. realizar gestión alguna, ni permitir el uso de su nombre para recolectar fondos, independientemente del propósito o destino que se brinde a éstos;

e. solicitar donativos o aportaciones para el Colegio de Abogados de Puerto Rico o para organizaciones cívicas, benéficas, profesionales o de cualquier otra índole.

Al participar en negocios, actividades o transacciones comerciales, económicas o financieras que no originan conflictos con sus funciones judiciales, las juezas o los jueces actuarán con cautela y prudencia para evitar la apariencia de conducta impropia o la sospecha razonable de que utilizan su cargo o el prestigio de su cargo para su beneficio personal o el de otras personas.

**HISTORIAL**

Este canon corresponde al Canon XXI de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género. Su precedente es el anterior Canon XVI de los Cánones de Ética Judicial de 1957, el cual sólo establecía una norma general.

Se reiteran, con cambios de estilo, las mismas normas del Canon XXI de 1977 ahora redactadas en forma de incisos. Se incorpora un nuevo inciso "c" que prohíbe la intervención en pleitos, cuyo resultado pudiera afectar sustancialmente los intereses económicos o financieros de las juezas y de los jueces.

**COMENTARIOS**

El canon, al establecer parámetros para la conducta de las juezas y los jueces en el contexto de negocios, actividades o transacciones comerciales, económicas o financieras, prohíbe la utilización del cargo o el prestigio del cargo judicial para obtener beneficio económico propio, para familiares o para otras personas. También prohíbe que las juezas y los jueces, al participar en la sociedad como consumidores de bienes y servicios, obtengan beneficios, privilegios o concesiones especiales por razón de sus cargos.

Prohíbe, además, participar en actividades económicas o comerciales, cuando éstas pudieran originar conflictos con el cabal cumplimiento de los deberes judiciales. Un negocio, actividad o transacción comercial, económica o financiera origina conflictos con los deberes del cargo judicial cuando, por razón de la naturaleza de la relación que existe entre las juezas o los jueces y tal negocio, actividad o transacción, las juezas o los jueces se colocan en una situación en la que se le puede razonablemente imputar parcialidad, prejuicio o la apariencia de parcialidad o prejuicio en la adjudicación de una controversia.

Igualmente, el canon impone a las juezas y los jueces el deber de examinar con cautela si los negocios, actividades o transacciones comerciales, económicas o financieras en las que participan o se proponen participar pudieran originar conflicto de intereses con sus funciones judiciales. Este deber les exige estar alertas ante posibles conflictos de interés en toda actividad en las que sus asuntos financieros estén involucrados.

A tenor con lo anterior, y de conformidad con la prohibición del nuevo inciso "c", las juezas y los jueces evitarán fungir como tales en cualquier pleito cuyo resultado pudiera afectar sustancialmente sus intereses económicos o financieros. Véase In re Solicitud de Lugo Bougal y Arraiza, 112 D.P.R. 134 (1982). Un resultado de un pleito tiene efecto sustancial sobre intereses económicos o financieros cuando incide sobre el valor o cuantía de acciones, bonos u otros valores o inversiones económicas

pertenecientes a las juezas o a los jueces o a sus familiares. Ausente un posible efecto de este tipo, la intervención en un pleito se regirá por los demás principios de estos cánones que imponen el deber de actuar con cautela y prudencia para evitar posibles conflictos de intereses o la apariencia de conflicto de intereses. En aquellos pleitos cuyo resultado pudiera afectar los intereses económicos o financieros de las juezas o de los jueces, pero no de manera sustancial, es deseable que las juezas o los jueces divulguen a las partes en qué consiste tal interés y si el mismo afecta o no la adjudicación imparcial de la controversia, para que queden debidamente informadas sobre el asunto y se tome el curso de acción correspondiente.

El canon prohíbe, además, que las juezas y los jueces participen directa o indirectamente en actividades de recolección de fondos, independientemente del uso que se pretenda brindar a éstos y de la entidad que promueva la recolección. Se trata de una norma general dirigida a evitar que las juezas y los jueces, o las entidades promotoras o beneficiarias de los fondos, se aprovechen de la imagen de autoridad de la Judicatura para compeler a los ciudadanos y las ciudadanas a cooperar en la recolección de los fondos o a aportar donativos. No obstante, la prohibición no debe entenderse en el sentido de impedir que las juezas y jueces participen en juntas y comisiones de organizaciones culturales y cívicas, a menos que la participación conlleve la gestión de recolectar fondos, en cuyo caso la participación estaría vedada bajo el canon.

Finalmente, es recomendable que las juezas y los jueces examinen este canon conjuntamente con el Canon 20 que dispone sobre la inhibición, lo que les ayudará a determinar si en las circunstancias particulares, ese es el mecanismo que deben utilizar para evitar incurrir en la conducta prohibida.

## PARTE VI.  INFORMES

### CANON 37.   Informes de Divulgación Financiera

Las juezas y los jueces cumplirán con la presentación de los informes de divulgación financiera, de conformidad con los requisitos establecidos en el reglamento aplicable a este canon aprobado por el Tribunal Supremo.

### HISTORIAL

El principio establecido en el inciso "b" del Canon X de los Cánones de Ética Judicial de 1977, según enmendado en virtud de la Resolución del Tribunal Supremo del 12 de noviembre de 1999 para dotar su redacción de neutralidad con relación al género, fue reubicado en este nuevo canon.

### COMENTARIOS

El canon propuesto acoge únicamente el contenido del inciso "b" del Canon X de Ética Judicial de 1977, que establece la obligación de las juezas y los jueces de rendir estos informes de conformidad con el reglamento aplicable, aprobado por el Tribunal Supremo.  El resto del texto fue eliminado porque se consideró innecesario, ya que el reglamento aplicable a este canon, aprobado por el Tribunal Supremo, incluye en forma detallada toda la información e instrucciones para la presentación de los informes.  Véase Resolución de 2 de marzo de 1998, 4 L. P. R. A. Ap. IV-AC. X.

El canon propuesto acoge el lenguaje del Canon 4 H (2) del Código Modelo de Conducta Judicial promulgado por la American Bar Associaton, respecto a la obligación que tienen las juezas y los jueces de rendir los informes de divulgación financiera. Excepto por la segunda oración del Canon 4 H (2) Modelo, nuestro reglamento también requiere divulgar la misma información exigida en el referido canon y la que exige el Canon 3 E (2) Modelo.

### CANON 38. Otros Informes

Las juezas y los jueces cumplirán con su deber de rendir otros informes requeridos por las reglas y normas administrativas de la Rama Judicial.

### HISTORIAL

Este canon es nuevo y se establece con el propósito de reconocer la obligación que tienen los miembros de la judicatura de rendir los informes que les sean requeridos en el ejercicio de sus labores judiciales.

**COMENTARIOS**

La reglamentación aplicable y las normas administrativas de la Rama Judicial exigen la presentación de ciertos informes a través de los cuales las juezas y los jueces deben rendir cuentas de la labor judicial.  Ejemplos de estos informes son los siguientes: (1) los informes periódicos sobre la gestión judicial de los Jueces Administradores y las Juezas Administradoras, de conformidad con las Reglas 7, 11 y 35 de las Reglas para la Administración del Tribunal de Primera Instancia, 4 L. P. R. A. Ap. II-B y la Regla 12 del Reglamento del Tribunal de Apelaciones de 16 de julio de 2004; (2) los índices mensuales sobre los affidávits o declaraciones de autenticidad autorizados de conformidad con la Ley Núm. 13 de 12 de marzo de 1908, según enmendada, Secciones 4 y 6A, 4 L.P.R.A. 890 Y 892a y el Memorando de la Oficina de Administración de los Tribunales Núm. 174 de 16 de febrero de 1996; (3) los informes de asistencia, de conformidad con las Directrices sobre registro de asistencia de jueces del Tribunal de Primera Instancia, Memorando de la Oficina de Administración de los Tribunales Núm. 225 de 9 de marzo de 1998.  Véase In Re González Porrata Doria, 2002 T. S. P. R. 129.