

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Olga E. Birriel Cardona | 2012 TSPR 4<br><br>184 DPR ____ |

Número del Caso: AD-2010-2

Fecha: 5 de enero de 2010

Oficina de Administración de los Tribunales:

      Lcda. Cristina Guerra Cáceres
      Lcdo. Félix Fumero Pugliessi

Abogados de la Querellada:

      Lcdo. Luis José Torres Asencio
      Lcdo. Alex Omar Rosa Ambert

Materia: Conducta Profesional

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Olga E. Birriel Cardona

AD-2010-2

PER CURIAM

En San Juan, Puerto Rico, a 5 de enero de 2012.

Nos corresponde analizar si una juez, luego de juramentar en su cargo, violó el Canon 27 de Ética Judicial, 4 L.P.R.A. Ap. IV-B, al presentar una moción ante la Junta de Personal de la Rama Judicial en la que, además de renunciar a la representación legal de un cliente, argumentó a su favor. Veamos los hechos que originan este proceso disciplinario.

I

El 14 de septiembre de 2009 el Gobernador de Puerto Rico, Hon. Luis G. Fortuño Burset, designó a

la Lcda. Olga E. Birriel Cardona para el cargo de Juez del Tribunal de Apelaciones. El Senado confirmó el nombramiento el 17 de noviembre de 2009. La juez Birriel Cardona juramentó en su cargo el 1 de diciembre de 2009. En el transcurso de las semanas subsiguientes, asistió a la Academia Judicial y poco después, se integró de lleno a sus funciones judiciales en el Tribunal de Apelaciones.

Durante los ocho años previos a su designación, la Juez Birriel Cardona se dedicó ininterrumpidamente a la práctica privada de la abogacía. Por tal razón, al momento de su nombramiento como Juez del Tribunal de Apelaciones existían varios casos tanto en foros administrativos como judiciales en los cuales figuraba como abogada de parte. En lo que nos concierne, la juez Birriel Cardona figuraba como abogada de parte en el caso administrativo Jorge Ortiz Estrada v. Directora Administrativa de los Tribunales, Q-09-16, que se tramitaba ante la Junta de Personal de la Rama Judicial. En ese procedimiento, el Sr. Jorge Ortiz Estrada, alguacil de la Rama Judicial, impugnó su traslado del Centro Judicial de Carolina al Centro Judicial de San Juan.

Luego de presentada la acción, el señor Ortiz Estrada recibió un pliego de interrogatorios de parte de la Oficina de Administración de los Tribunales (OAT). Sin embargo, este y otros trámites procesales del caso coincidieron con quebrantos de salud de parte del señor Ortiz Estrada y de su entonces abogada, la hoy Juez Birriel Cardona.

En específico, el alguacil Ortiz Estrada y su familia se enfermaron durante el mes de agosto de 2009 de la enfermedad conocida como fiebre porcina. De igual forma, durante el mes de octubre de 2009, la entonces licenciada Birriel Cardona fue hospitalizada en dos ocasiones: primero en el Hospital Pavia de Santurce y posteriormente en el Hospital del Maestro. Estos padecimientos de salud imposibilitaron que el señor Ortiz Estrada y su representación legal atendieran los incidentes procesales del caso.

Ante la inacción de la parte querellante en el proceso, la Junta de Personal emitió una orden el 21 de octubre de 2009 en la que le concedió diez días al señor Ortiz Estrada para que mostrara causa por la cual no debía desestimarse su querella por falta de interés.

El 18 de noviembre de 2009 el Gobernador informó a la licenciada Birriel Cardona la confirmación de su designación y su consiguiente nombramiento como Juez del Tribunal de Apelaciones. El 1 de diciembre de 2009, al momento de juramentar en su cargo, Birriel Cardona no había renunciado a la representación legal del señor Ortiz Estrada en el caso ante la Junta de Personal.

El 10 de febrero de 2010 la Junta de Personal emitió una resolución mediante la cual archivó la querella del señor Ortiz Estrada por falta de interés. Esta resolución la recibió la Juez Birriel Cardona tres meses después de asumir su cargo.

Ante el archivo de la querella del alguacil Ortiz Estrada, la Juez Birriel Cardona presentó el 2 de marzo de 2010 un escrito titulado "Reconsideración, Solicitud de Relevo de Archivo de Querella y de Representación Legal". En él, además de renunciar a la representación legal del alguacil Ortiz Estrada, argumentó las razones por las cuales no procedía desestimar el caso. En específico, indicó a la Junta de Personal que "no ha sido falta de interés de parte del querellante, sino una acumulación de circunstancias ajenas a la voluntad de este y/o de su representación [las] que han afectado el caso". Apéndice, pág. 45.

Añadió que

[l]a decisión impugnada es una que adolece de fundamentos legales, arbitraria, contraria a los preceptos constitucionales que protegen el derecho al trabajo y que garantizan que los procesos en que intervenga el Estado que afecten los derechos de propiedad y libertad sea [sic] uno justo. La decisión que se trata es una que atenta contra los derechos civiles y constitucionales de los ciudadanos de este país que cobijan a los que trabajan en la Rama Judicial como lo es el derecho a la intimidad. Es por ello que el querellante debe ser oído, su reclamo es un valido [sic] y legitimo [sic], merecedor de evaluarse sobre todo por su patrono; la Rama Judicial.

Apéndice, Pág. 46.

Finalmente, la Juez Birriel Cardona solicitó la reconsideración del archivo de la querella y que se aceptara su renuncia como abogada del caso. Íd. Ante la moción presentada, la Junta de Personal emitió el 10 de marzo de 2010 una Resolución en la que declaró con lugar la solicitud de reconsideración y ordenó continuar con los

trámites de la querella. Además, relevó a la Juez Birriel Cardona de la representación legal del señor Ortiz Estrada y concedió 20 días a este para que anunciara su nueva representación legal.

El 11 de junio de 2010 la Juez Birriel Cardona recibió una carta de parte de la Oficina de Asuntos Legales de la OAT en la que se le notificó que era objeto de una investigación. Esta iba dirigida a auscultar si la comparecencia de ella ante la Junta de Personal en el caso del alguacil Ortiz Estrada constituyó una violación al Canon 27 de Ética Judicial, supra. Además, en la referida comunicación se le solicitó a la juez Birriel Cardona que enviara por escrito sus comentarios en torno a la investigación. Así lo hizo.

El 12 de enero de 2011 la OAT presentó la querella que nos ocupa ante la Comisión de Disciplina Judicial. En ella se adujo que la Juez Birriel Cardona incurrió en conducta contraria al Canon 27 de Ética Judicial, supra, al comparecer como abogada ante la Junta de Personal de la Rama Judicial en el caso Jorge Ortiz Estrada v. Directora Administrativa de los Tribunales, Caso Núm. Q-09-16, y argumentarlo. La OAT recomendó una censura como sanción.

La Juez Birriel Cardona fue notificada de la querella en su contra el 14 de enero de 2011. Luego de varios incidentes procesales, las partes estipularon como evidencia varios documentos. Además, presentaron sus respectivas posiciones mediante memorandos de derecho al efecto. Así, el caso quedó sometido en los méritos para

que la Comisión de Disciplina Judicial emitiera su informe.

La Comisión de Disciplina Judicial formuló su informe el 16 de agosto de 2011. En él concluyó que la actuación de la Juez Birriel Cardona constituyó una violación al Canon 27 de Ética Judicial, supra. Por consiguiente, recomendó que se amonestara a la Juez Birriel Cardona por su conducta. Luego de evaluar el expediente, estamos en posición de resolver.

II

Es un principio reiterado de nuestro ordenamiento jurídico que los "cánones [de ética judicial] son normas mínimas que deben cumplir celosamente quienes tienen la encomienda de impartir justicia". Preámbulo del Código de Ética Judicial, 4 L.P.R.A. Ap. IV-B. Véase, además, In re Claverol Siaca, 175 D.P.R. 177, 188 (2009). Por esa razón, sus "enunciados son de carácter general", y en consecuencia, aplican a la vida privada y pública de los magistrados. Íd. Eso implica que los jueces deben ser rigurosos al estudiar y aplicar los cánones de ética a sus realidades particulares pues "[s]u contenido y alcance serán limitados por los distintos escenarios en los que se desempeñen". Íd.

El Canon 27 del Código de Ética Judicial de 2005, supra, establece:

> Las juezas y los jueces no ejercerán la abogacía ni la notaría, excepto las funciones de autenticación y autorización de documentos que les asigna la ley. Tampoco actuarán como asesores o asesoras legales de individuos o

entidades      públicas      o      privadas,
independientemente  de  que  conlleve  o  no
remuneración.

Se abstendrán de recomendar abogadas o abogados
para que brinden representación legal ante
cualquier foro o servicios profesionales para
cualquier gestión, excepto cuando lo hagan como
parte del manejo de asuntos de familiares hasta
el cuarto grado de consanguinidad o afinidad.

Conviene señalar que el Canon 27 actual corresponde al derogado Canon IX de Ética Judicial de 1977. 4 L.P.R.A. Ap. IV-A. Como señala el historial de ese precepto, la prohibición de ejercer la abogacía no formaba parte de los Cánones de Ética Judicial de 1957. Sin embargo, el Canon IX de 1977, supra, la introdujo por primera vez. De esta forma, se acogió la norma recogida en el Canon 4-G del Código Modelo de Conducta Judicial publicado por la *American Bar Association*. Véase, J. Alfani y otros, Judicial Conduct and Ethics, 4ta Ed., Lexis Nexis, 2007, App B-31.

Como se aprecia, la prohibición del ejercicio de la abogacía y la notaría por parte de los jueces contiene únicamente una excepción: Las funciones de autenticación y autorización de documentos que les son asignadas a los jueces por la Ley de 12 de marzo de 1908, según enmendada, 4 L.P.R.A. secs. 890, 892 y 892(a). La facultad limitada que les concede esa ley para ejercer la notaría se limita a tomar declaraciones juradas que son incidentales al descargo de la función judicial. Por el contrario, se excluyó específicamente toda declaración de autenticidad

que comprendiera un interés privado, no relacionado al quehacer judicial.

De igual manera, el Canon 27, supra, extiende la restricción del ejercicio de la profesión al establecer que los magistrados tampoco pueden ofrecer asesoramiento legal a individuos o entidades públicas o privadas, exista lucro o no.

El propósito del Canon 27, supra, es "evitar conflictos de intereses o la apariencia de parcialidad y actuación impropia en el ejercicio de las funciones judiciales". In re Aprobación Cánones Ética 2005, 164 D.P.R. 403, 456 (2005). Dicho de otro modo, infringir el Canon 27, supra, podría colocar a los jueces en la posición de tener que emitir juicio sobre controversias que tendrían el potencial de ser presentadas ante la Rama Judicial. Por esa razón, el Art. 2.018 de la Ley Núm. 201-2003, conocida como Ley de la Judicatura de 2003, 4 L.P.R.A. sec. 24p, indica que "[n]ingún juez ejercerá la profesión de abogado o el notariado". Su conducta se debe caracterizar por el más alto grado de imparcialidad e integridad y debe responder a las normas que salvaguardan la independencia de su ministerio. In re Grau Acosta, 172 D.P.R. 159, 164 (2007).

Precisamente en In re Grau Acosta, Íd., tuvimos la oportunidad de analizar una situación parecida a la que nos ocupa hoy. Allí, el Lcdo. Eduardo Grau Acosta fue nombrado y confirmado Juez Superior. Con anterioridad a su nombramiento, el entonces licenciado Grau Acosta

representaba a ciertos miembros de una sucesión en un pleito de partición de caudal hereditario. Íd., pág. 165.

Así las cosas, el ya juramentado Juez Grau Acosta presentó su renuncia en el pleito de partición. Sin embargo, incurrió en una serie de infracciones éticas. Entre ellas, y en lo que nos atañe, compareció como abogado en varias ocasiones, incluso en la misma sede del Tribunal de Primera Instancia donde ejercía la magistratura. En sus comparecencias se identificó como abogado de parte e incluso, en una ocasión se presentó como abogado de los demandados a pesar de que había renunciado a su representación legal hacía mucho tiempo. Todas estas actuaciones se debieron a que el entonces Juez Grau Acosta quería proteger su interés en los honorarios de abogado.

Al sopesar esas actuaciones, indicamos que

con su comportamiento, Grau Acosta dejó a un lado los preceptos éticos que gobiernan la conducta de los miembros de la Judicatura. Sin duda, éste actuó impropiamente al comparecer ante el Tribunal de Guayama en calidad de abogado de la parte demandada y después en su carácter personal. Dado que en ese momento ya era efectiva su renuncia a la representación legal de los demandados y, toda vez que estaba ejerciendo su cargo como Juez Superior en ese mismo tribunal, Grau Acosta tenía el deber de informarle al Juez Administrador su interés personal en el caso para que éste dispusiera el traslado administrativo del mismo, conforme lo establecen las Reglas de Administración de los Tribunales. Sin embargo, Grau Acosta no sólo omitió informar la situación, sino que también intervino en el pleito sin permiso de su supervisor y dentro del horario regular de trabajo. Dicha conducta es incompatible con sus responsabilidades judiciales y da margen a la creencia de que estuvo ejerciendo influencia indebida en el ánimo del juez que presidía el

> caso. Reiteramos que la imparcialidad en el ejercicio de las funciones judiciales es un factor tan esencial para fortalecer la confianza de la ciudadanía en la Judicatura que aún la apariencia de ello puede ser muy perniciosa y, por ende, debe ser evitada por todo miembro de la Judicatura.

Íd., págs. 178-179.

Finalmente, destituimos al señor Grau Acosta del cargo de juez superior y lo suspendimos indefinidamente del ejercicio de la abogacía. Íd., pág. 181. En lo relativo al tema de la renuncia de representación legal indicamos lo siguiente:

> [L]a nominación por parte del Gobernador constituye la etapa inicial del proceso de nombramiento al cargo judicial, ya que puede ocurrir que el Senado no preste su consentimiento. Por ende, en ese momento la persona nominada que es abogado todavía no está obligada a renunciar a la representación legal de sus clientes. Sin embargo, cuando el Senado confirma el nombramiento y el abogado tiene la intención de ocupar el cargo -aproximándose el momento en que va a juramentar como juez- surge la obligación de renunciar a cualquier representación legal que ostente.

Íd., pág. 176.

Esta norma obedece a que hasta el momento en que juramenta en su cargo, el abogado no es juez. Hasta ese momento, incluso puede rechazar el nombramiento y no juramentar. Como las obligaciones éticas del cargo están vigentes una vez el abogado juramenta al cargo de juez, a partir de esa fecha no puede comparecer como abogado. Por eso tiene la obligación de renunciar a la representación legal que ostentó antes de ocupar el cargo de juez.

En nuestra jurisdicción no contamos con un procedimiento uniforme que regule la transición del abogado litigante a juez. Solo contamos con el Canon 27, supra, y lo mencionado en In re Grau Acosta, supra. Ante ese panorama, reiteramos que todos los jueces recién nombrados deben renunciar a todos los casos en los que son abogados de parte. Véase, J. Riley, Ethical Obligations of Judges, 23 Mem. St. U. L. Rev. 507, 519 (1993).[1] Para ello tienen el periodo que comprende desde su confirmación por el Senado hasta la investidura como juez. De esta forma, se evita la apariencia de parcialidad que surgiría de una comparecencia como abogado de parte mientras se ejerce el cargo de juez.

Por ello, la mejor práctica forense que debe seguir un juez recién nombrado es planificar de antemano la forma en que va a culminar las relaciones profesionales en su despacho. Lo recomendable es que, en la medida que sea posible, haga los arreglos pertinentes con sus clientes y renuncie a todas las representaciones legales antes de jurar como juez, pues luego de ocupar el cargo no podrá comparecer como abogado. La organización temprana en ese aspecto redundará en una mejor transición de la práctica del derecho al ejercicio de la magistratura.

---

[1] Para un análisis de una jurisdicción en la que los jueces cuentan con un periodo de 180 días luego de asumir el cargo para renunciar a los casos en que sean abogados de parte, véase, State v. Lipford, 67 S.W.3d 79 (Tenn. Crim. App. 2001).

III

La Comisión de Disciplina Judicial concluyó en su informe que la Juez Birriel Cardona infligió el Canon 27, supra, al comparecer ante la Junta de Personal para defender los intereses del alguacil Ortiz Estrada. Coincidimos con su postura.

Conforme nuestro ordenamiento jurídico, no existe excepción que permita el ejercicio de la abogacía por parte de un miembro de la judicatura. Por el contrario, la Ley de la Judicatura, supra y los Cánones de Ética, supra, contienen una prohibición absoluta en ese aspecto. Todo abogado que asume el cargo de juez tiene la obligación de renunciar a toda representación legal.

En este caso, la Juez Birriel Cardona no se limitó a renunciar a la representación legal del alguacil Ortiz Estrada. Por el contrario, también solicitó reconsideración de la determinación de archivo de la querella. En específico, la Juez Birriel Cardona argumentó que la decisión de la Directora Administrativa de los Tribunales carecía de fundamentos legales y que era arbitraria y contraria a varios preceptos constitucionales. A su vez, reclamó que los planteamientos del señor Ortiz Estrada debían ser escuchados pues eran, a su entender, válidos y legítimos.

Evidentemente, la moción presentada por la Juez Birriel Cardona tuvo un efecto persuasivo en la Junta de Personal pues dio lugar a que se ordenara la continuación de la querella. Nos resulta ineludible concluir que la

Juez Birriel Cardona actuó en contravención al Canon 27 de Ética Judicial, supra. Somos conscientes de que la Juez Birriel Cardona tenía un deber ético de presentar su solicitud de renuncia a la representación legal del señor Ortiz Estrada. Sabemos también que dos hospitalizaciones dificultaron la presentación oportuna de la moción de renuncia. No obstante, la juez debió ser más prudente y limitarse a renunciar como abogada de parte. Debió dejar que fuera la nueva representación legal de su cliente quien abogara por él. De ser necesario, podía servir de testigo para declarar bajo juramento las dificultades que tuvo para cumplir las órdenes de la Junta de Personal.

Ahora bien, si comparamos la conducta desplegada por la Juez Birriel Cardona en este caso con la conducta que realizó el entonces Juez Grau Acosta, supra, notamos que la última fue mucho más desafiante e impropia. Es decir, el señor Grau Acosta litigó personalmente en el Tribunal de Primera Instancia, Sala de Guayama, donde también laboraba como Juez Superior. Además, faltó a la verdad cuando indicó que comparecía como abogado de la parte demandada, aunque en realidad ya había renunciado a la representación legal. De igual forma, el Juez Grau Acosta declinó inhibirse en unos casos ante su consideración, a pesar de que como cuestión de derecho ello procedía. A la hora de imponerle una sanción a la juez Birriel Cardona, tenemos presentes estas distinciones.

También pesan en nuestro ánimo las enfermedades que tuvo que afrontar la Juez Birriel Cardona y el alguacil

Ortiz Estrada durante los meses en controversia. No dudamos que las dificultades que ambos enfrentaron hicieron que fuera escabrosa la comunicación entre ellos. La juez nunca tuvo la intención de continuar como abogada de parte después que juramentó a su cargo en la Rama Judicial. Su único interés fue evitar que esa circunstancia y su hospitalización previa causaran que se archivara un caso de una parte con interés. Todas estas circunstancias demuestran que la Juez Birriel Cardona actuó motivada por evitar que se cometiera una injusticia. No obstante, la comparecencia indebida de la Juez Birriel Cardona ante la Junta de Personal, en la que abogó por el señor Ortiz Estrada, engendró la falta ética que atendemos hoy.

IV

Atendidos los hechos probados, el cargo imputado, las circunstancias concomitantes y el historial profesional intachable de la Juez Birriel Cardona, limitamos la sanción en esta ocasión a una **amonestación**. Le advertimos que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Judicial, supra, conllevará una sanción disciplinaria más severa.

Se dictará Sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Olga E. Birriel Cardona        AD-2010-2

SENTENCIA

En San Juan, Puerto Rico, a 5 de enero de 2012.

Por los fundamentos expuestos en la Opinión Per Curiam que antecede, la cual se hace formar parte integrante de la presente Sentencia, limitamos la sanción en esta ocasión a una **amonestación**. Le advertimos que cualquier transgresión futura a las normas mínimas de conducta que impone el Código de Ética Judicial, supra, conllevará una sanción disciplinaria más severa.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal. La Jueza Asociada señora Pabón Charneco no intervino. El Juez Asociado señor Feliberti Cintrón no interviene.

Larissa Ortiz Modestti
Secretaria del Tribunal Supremo Interina